SIXTH DIVISION

January 31, 2003

No. 1-97-2315

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee,

v.

DONALD TONEY,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Stanley Sacks,

Judge Presiding.

JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Defendant, Donald Toney, appeals his convictions for first degree murder, attempted first degree murder, and aggravated discharge of a firearm.  Codefendants Robert Foster and Frederick Luckett were tried by separate juries and are not involved in this appeal.  On appeal, defendant contends that the trial court erred by (1) instructing the jury on felony murder with a predicate felony of aggravated discharge of a firearm; (2) refusing to instruct the jury on the mitigating offense of second degree murder where defendant was charged with intentional and knowing murder and the evidence warranted a second degree instruction; (3) admitting two weapons into evidence; and (4) imposing consecutive sentences.  The defendant also contends the State failed to prove the identity of the shooter beyond a reasonable doubt and denied him a fair trial because of improper comments during closing arguments.

Based on the facts of this case, it was reversible error for the trial judge to refuse to instruct the jury on the mitigating offense of second degree murder because defendant was charged with intentional and knowing murder and the evidence warranted a second degree instruction.  We reverse and remand for a new trial.

BACKGROUND

At approximately 7 p.m. on  October 10, 1995, Antoine Harris and his brother Terrance, members of the Four Corner Hustlers street gang, recognized defendant as he drove on 123rd Street past Halsted Street with his brother Luckett and Foster.  Defendant, Luckett, and Foster were Gangster Disciples.  A confrontation occurred during which threats were yelled, Antoine threw a bottle at defendant's car, and shots were fired.  Defendant remained in the car.  Luckett and Foster got out of the car and fired their guns.  Toney drove away alone.  Phillip Matthews died from gunshot wounds.  Bobby Roberson, Terrance, and Antoine were not injured.  Antoine knew defendant and told the police where he lived.  Within an hour of the shooting, the police arrested defendant, Luckett, and Foster.  Antoine and Terrance identified defendant, Foster, and Luckett in a lineup and Antoine identified the rifle that Foster fired.

Defendant denied involvement in the shootings, but when Detective Baker showed him the two recovered weapons
 and told him that he and his car had been identified, defendant admitted his involvement.  At trial, he denied any plan or intent to shoot Four Corner Hustlers and maintained the shootings were in self-defense.  A forensic expert who examined the firearms evidence including 15 fired cartridge casings concluded the casings were consistent with the two recovered weapons; however, three fired bullets, including a .38-caliber bullet from the body of Phillip Matthews, were not discharged from the two weapons fired by Luckett and Foster.

Defendant was indicted on eight counts: counts I and II charged defendant with first degree  intentional and knowing murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 1994)); counts III, IV and V charged defendant with attempted murder (720 ILCS 5/8-4, 9-1(a) (West 1994)); counts VI, VII and VIII charged defendant with aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 1994)).  
The jury found defendant guilty of the first degree murder of Phillip Matthews, guilty of the attempted murder of Antoine Harris, Terrance Harris, and Bobby Roberson, and guilty of aggravated discharge of a firearm in connection to Antoine Harris, Terrance Harris, and Bobby Roberson.  Defendant was sentenced to 35 years in prison for first degree murder, consecutive to 18 years for attempted murder, concurrent to 10 years for aggravated discharge of a firearm.

I. FELONY MURDER JURY INSTRUCTION

We review the trial court's decision regarding jury instructions under an abuse of discretion standard.  
People v. Kidd
, 295 Ill. App. 3d 160, 167 (1998).  Defendant argues that the trial court erred by instructing the jury on felony murder because the shootings were reasonable acts of self-defense, the evidence failed to show that the defendant planned or participated in a forcible felony during which Phillip Matthews was murdered, and defendant was not charged with felony murder.  Defendant additionally argues that aggravated discharge of a firearm cannot serve as a predicate felony for a felony murder charge.

Our supreme court noted in 
People v. Dekens
, 182 Ill. 2d 247, 252 (1998), that Illinois follows the proximate cause theory of felony murder.  "Consistent with the proximate cause theory, liability should lie for 
any
 death proximately related to the defendant's criminal conduct."  
(Emphasis added.)  
Dekens
, 182 Ill. 2d at 252.  Thus, defendant is subject to the felony murder doctrine if the "decedent's death is the direct and proximate result of the defendant's felony."  
Dekens
, 182 Ill. 2d at 252.

We first address the defendant's argument that the evidence demonstrated the shooting was in self-defense and failed to show defendant planned or participated in a forcible felony during which Phillip Matthews was murdered.  The State's theory was that Toney, together with Foster and Luckett, were the aggressors, and the murder of Phillip Matthews occurred as the result of Foster and Luckett shooting at Four Corner Hustlers.  The State's evidence established that defendant asked Luckett and Foster to accompany him to rival gang territory as "backup" and knew that Luckett and Foster brought guns. Defendant drove Luckett and Foster, armed with weapons, into rival gang territory.  Defendant stopped his vehicle, and Foster and Luckett exited the vehicle and shot at several rival gang members.  Defendant drove away alone, but tried unsuccessfully to aid Foster and Luckett in leaving the scene of the shooting.  Thus, the State provided evidence that the victim's death was a direct and proximate result of defendant's felonious conduct in aiding and facilitating Foster and Luckett's shooting at rival gang members.  The defense presented a competing version of the shootings based on a theory of self-defense and we will address the argument that defendant's competing theory of self-defense warranted a second degree murder instruction in the next section.  However, regarding the felony murder instruction, we find that based on the State's evidence, there was sufficient evidence in this record that defendant participated in a forcible felony during which Phillip Matthews was murdered and the trial court did not abuse its discretion by instructing the jury on felony murder.

Next we address defendant's argument that it was error for the trial court to instruct on felony murder because he was not charged with felony murder.  The test is whether the indictment informed defendant of the offense charged with sufficient specificity to allow him to prepare his defense and protect him from double jeopardy.  
People v. Allen
, 56 Ill. 2d 536, 542-43 (1974).  
Defendant  argues the felony murder instruction caused unfair surprise and prejudice because he was only charged with intentional and knowing first degree murder.  720 ILCS 5/9-1(a)(1), (a)(2) (West 1994).
  A jury may be instructed on felony murder even if felony murder was not specifically charged.  
People v. Maxwell
, 148 Ill. 2d 116 (1992).  "[T]he law in Illinois recognizes only one offense of murder; thus, there is no requirement that a defendant be charged specifically under section 9-1(a)(3) [(Ill. Rev. Stat. 1985, ch. 38, par. 9-1(a)(3) (now 720 ILCS 5/9-1(a)(3) (West 1996)))] in order to be convicted under the felony murder theory."  
People v. Jackson
, 233 Ill. App. 3d 1089, 1096 (1992). 
 The court in 
Jackson
 found the defendant was protected from double jeopardy because if defendant was charged and acquitted under section 9-1(a)(1), he could not be tried for the murder of the same individual under subparagraph (a)(2) or (a)(3).  
Jackson
, 233 Ill. App. 3d at 1097.  The court in 
Jackson
 found no unfair surprise or prejudice because the defendant was aware of the felony murder theory from the instruction conference.  
Jackson
, 233 Ill. App. 3d at 1098.

In this case, before trial the State informed defendant and the trial judge that it sought to add a felony murder charge to the charge of intentional and knowing murder.  The trial judge denied the request but put the defense on notice that a felony murder instruction would be given if supported by the evidence.  Defendant knew that it was necessary to prepare a defense against the charges of aggravated discharge of a firearm, contained in his indictment and serving as the predicate felony for the felony murder theory.  Defendant was also well aware of the State's theory that the killing of Phillip Matthews occurred during the commission of this predicate felony.  We find no abuse of discretion by the trial judge in instructing the jury on felony murder because defendant suffered no unfair surprise or prejudice and was informed of the offense with sufficient specificity to allow him to prepare his defense and to avoid double jeopardy.  

Defendant additionally argues the felony murder instruction was improperly given because aggravated discharge of a firearm cannot serve as a predicate felony for felony murder.  A defendant commits aggravated discharge of a firearm when he knowingly or intentionally discharges a firearm in the direction of a person.  720 ILCS 5/24-1.2 (a)(2) (West 1996).  The Illinois Criminal Code of 1961 requires that the offense underlying a felony murder be a "forcible felony."  720 ILCS 5/9-1(a)(3) (West 1996).  The Criminal Code defines forcible felony as "treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat of physical force or violence against any individual."  720 ILCS 5/2-8 (West 1996). 

While aggravated discharge of a firearm is not specifically listed among the forcible felonies that can serve as a predicate for felony murder, we note the definition of forcible felony is not limited to those listed and includes any "felony which involves the use or threat of physical force or violence against any individual."  720 ILCS 5/2-8 (West 1996).   It is consistent with the purpose of the felony murder statute to recognize aggravated discharge of a firearm as a predicate felony for felony murder.  The purpose of the felony murder statute is to deter individuals from committing forcible felonies by holding them responsible for murder if death results from their criminal acts that involve the use or threat of force or violence against any individual.  
People v. Graham
, 132 Ill. App. 3d 673, 680 (1985).  The felony murder statute serves "to limit the violence that accompanies the commission of forcible felonies, so that anyone engaged in such violence will be automatically subject to a murder prosecution should someone be killed during the commission of a forcible felony."  See 
People v Belk
, No. 92937, slip op. at 4 (January 24, 2003) (and cases cited therein).  Whether the perpetrator intended to kill the victim is irrelevant for purposes of the felony murder statute.  
Belk
, slip op. at 8, citing 
People v. Shaw
, 186 Ill. 2d 301, 322 (1998).  The felony murder statute exists because forcible felonies are so inherently dangerous that a resulting homicide, even an accidental one, is strongly probable.  
People v. Jenkins
, 190 Ill. App. 3d 115, 126 (1989).  Depending on the factual context, the forcible felony of aggravated discharge of a firearm can be so inherently dangerous that a resulting homicide, even an accidental one, is strongly probable.

Illinois case law has recognized this particular forcible felony as a predicate felony for felony murder; "[b]ecause the offense of aggravated discharge of a firearm necessarily involves violence directed against an individual, it constitutes a forcible felony within the intendments of felony murder."   
People v. Pugh
, 261 Ill. App. 3d 75,77 (1994).  In 
Pugh
 the defendants were charged with felony murder based on the predicate felony of aggravated discharge of a firearm.  Defendants had fired at several people who returned fire, and the victim was killed. 
 
Pugh
, 261 Ill. App. 3d at 76.  The appellate court reversed the trial court's dismissal of the felony murder charges and held that the felony murder charges were proper because "[d]efendants are responsible for any death precipitated by their initial criminal acts provided it was their criminal acts which set in motion the events which ultimately resulted in death."  
Pugh
, 261 Ill. App. 3d at 77.
 
 The court noted that, under felony murder, the defendant may be liable for either an intentional or accidental killing or for a killing committed by an accomplice or a third party.  
Pugh
, 261 Ill. App. 3d at 77.  In addition, the defendant need not perform the acts that cause the victim's death, and the defendant's felonious conduct does not have to be contemporaneous with the death. 
 
Pugh
, 261 Ill. App. 3d at 77-78.  The court in 
Pugh
 concluded that "it was foreseeable that if defendants here fired guns in the direction of other people, someone would be likely to return fire and, just as likely, someone could be killed." 
 
Pugh
, 261 Ill. App. 3d at 78.

We note the Illinois Supreme Court has recently clarified the circumstances under which forcible felonies can properly serve as predicate felonies for a charge of felony murder in 
People v. Morgan
, 197 Ill. 2d 404 (2001)
(footnote: 1).  In 
Morgan,
 the supreme court reviewed the holding of the Fourth District Appellate Court in 
People v. Morgan
, 307 Ill. App. 3d 707 (1999), that aggravated discharge of a firearm and aggravated battery could not serve as a predicate felony for the felony murder instruction under the facts of that case.  In 
Morgan
, the supreme court found that because the predicate felonies arose from and were inherent in the murders of the two victims, the forcible felonies could not serve as predicate felonies for felony murder.  
Morgan
, 197 Ill. 2d at 447-48.  While the Criminal Code requires that the offense underlying a felony murder be a forcible felony, not all forcible felonies can serve as the predicate for felony murder.  
Morgan
 limits the predicate felonies for felony murder to those felonies which do not arise from and are not inherent in the murder itself.  
Morgan
, 197 Ill. 2d at 447-48.  In light of that limitation, the factual context surrounding the murder is critical in determining whether the forcible felony can serve as a predicate felony for felony murder.  T
he facts of 
Morgan
 are significantly different from the facts of the instant case.  The issue is whether, in the factual context of the instant case, aggravated discharge of a firearm can serve as the predicate felony for felony murder.

In 
Morgan
, the 14-year-old defendant, Jon Roe Morgan, killed his grandfather, Keith Cearlock, after his grandfather beat him with a razor strap for receiving a detention.  The defendant originally obtained the gun to kill himself, loaded it, took aim and fired at a bottle.  The defendant's grandfather had threatened in the past to kill him, and the defendant believed his firing the gun would provoke his grandfather to carry out the threat.  As the defendant left the bathroom, he encountered his grandfather coming toward him and shot him.  His grandmother, Lila Cearlock, was standing in the hallway screaming and the defendant shot her in the back as she ran out of the house.

Morgan was originally indicted on eight counts: counts I, II, III and IV charged Morgan with the first degree intentional or knowing murders of Lila and Keith (720 ILCS 5/9-1(a)(1), 1(a)(2) (West 1994)); counts V and VI charged Morgan with the felony murders of Lila and Keith based on the forcible felony of aggravated battery (720 ILCS 5/9-1(a)(3) (West 1994)), and counts VII and VIII charged Morgan with the felony murders of Lila and Keith, based on the forcible felony of aggravated discharge of a firearm (720 ILCS 5/9-1(a)(3) (West 1994)).
  Following a jury trial, the defendant was convicted of the first degree murder of his grandmother, Lila Cearlock, and the second degree murder of his grandfather, Keith Cearlock.

We note the appellate court in 
Morgan
 discussed the 
Pugh
 case when first addressing the issue of whether aggravated battery and aggravated discharge of a firearm could serve as predicate felonies for felony murder.
  The 
appellate court 
concluded that in 
Pugh
 felony murder was properly charged because the defendant committed the independent felony of aggravated discharge of a firearm by engaging in a gun battle and a bystander was killed by return fire.  
Morgan
, 307 Ill. App. 3d at 713.  The appellate court noted that aggravated battery and aggravated discharge of a firearm can serve as a predicate felony for a felony murder instruction as long as those crimes have an independent felonious purpose, and are not merely incidental to the murder itself.  
Morgan
, 307 Ill. App. 3d at 715.  However, in addressing Morgan's
 conviction for the first degree murder of his grandmother, the appellate court in 
Morgan
  indicated, "Because the record in this case fails to show the commission of a predicate felony that had an independent felonious purpose, we conclude that the trial court erred by instructing the jury that defendant could be convicted of first degree murder on a felony murder theory."  
Morgan
, 307 Ill. App. 3d at 714.  The appellate court held "that the predicate felony underlying a charge of felony murder must involve conduct with a felonious purpose other than the killing itself."  
Morgan
, 307 Ill. App. 3d at 714.

The Illinois Supreme Court 
agreed with the reasoning of the appellate court indicating as follows:

"[W]e agree with the appellate court that where the acts

constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder.  Because the predicate felonies in this case arose from and were inherent in the murders of Keith and Lila, the jury should not have been instructed that Jon could be convicted of first degree murder on a felony murder theory.  Accordingly, we affirm the appellate court's finding that the trial court erred in instructing the jury on felony murder."  
Morgan
, 197 Ill. 2d at 447-48.

However, the supreme court disagreed with the appellate court's conclusion that the trial court's error 

in instructing the jury on felony murder constituted reversible error regarding the defendant's conviction for the 

first degree murder of his grandmother, Lila, and noted as follows:

"In this case, although the jury was instructed that Jon had been charged with two types of first degree murder, knowing or intentional murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 1996)) and felony murder (720 ILCS 5/9-1(a)(3) (West 1996)), only general verdict forms were used at Jon's trial.  The jury received three verdict forms for each victim: (1) not guilty; (2) guilty of first degree murder; and (3) guilty of second degree murder.  It is well settled that ' "where an indictment contains several counts arising out of a single transaction, and a general verdict is returned[,] the effect is that the defendant is guilty as charged in each count ***." '  [Citations.]  Thus, a general verdict finding a defendant guilty of murder, where the defendant was charged with intentional, knowing, and felony murder, raises the presumption that the jury found the defendant committed the most serious crime alleged, intentional murder.  [Citation.]  In this case then, we must presume that the jury found Jon guilty of the most serious crime alleged, intentional or knowing murder, so that any error in instructing the jury on felony murder did not deprive Jon of a fair trial.  We therefore reverse the appellate court's finding that Jon's conviction must be reversed and remanded for a new trial."  
Morgan
, 197 Ill. 2d at 448. 

Regarding the issue of whether aggravated discharge of a firearm can serve as the predicate felony for the felony murder instruction in this case, we note a critical distinction between 
Morgan
 and the instant case.  Unlike 
Morgan
, where the acts constituting forcible felonies arose from and were inherent in the act of murder itself, here the State's evidence demonstrated that the acts constituting the forcible felony of aggravated discharge of a firearm were not inherent in the act of murder itself but, rather, involved conduct with a felonious purpose other than the killing of Phillip Matthews.  We find the facts in the instant case similar to the facts in 
Pugh
 and dissimilar to the facts of 
Morgan
.  In the instant case,
 there was evidence similar to the evidence in 
Pugh
 that the defendant and his companions engaged in a gun battle with a rival gang and a bystander was killed.

As noted by the appellate court in 
Morgan
, the defendant in 
Pugh
  intended to commit the independent forcible felony of aggravated discharge of a firearm and a death resulted from the use of violence.  
Morgan
, 307 Ill. App. 3d at 713.  In this case, there is evidence that defendant and his companions intended to commit the independent forcible felony of aggravated discharge of a firearm by shooting at the Harris brothers and the death of Phillip Matthews resulted from the use of violence.  The appellate court in 
Morgan
 concluded that, under the facts of 
Pugh
, felony murder was properly charged.  
Morgan
, 307 Ill. App. 3d at 713.  
The facts of 
Pugh
 are similar to the facts we have under consideration here.  We agree with 
Morgan
's observation related to 
Pugh
 and similar cases that "[a]pplication of the felony murder rule in such cases advances the 'legislature's concern for protecting the general populace and deterring criminals from acts of violence.' "  
Morgan
, 307 Ill. App. 3d at 713, quoting 
People v. Lowery
, 178 Ill. 2d 462, 469 (1997). 

The appellate court in 
Morgan
 noted the rule it enunciated did not preclude a conviction for murder on facts such as those in 
Pugh
.  
Morgan
, 307 Ill. App. 3d at 715.  The supreme court in 
Morgan
 agreed with the appellate court and reaffirmed the rule that "where the acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder."  
Morgan
, 197 Ill. 2d at 447.  That rule, however, does not prevent a forcible felony from serving as the predicate felony for felony murder when the forcible felony involves conduct not inherent in the act of murder, but conduct with an independent felonious purpose other than the killing itself.  We find nothing in the discussion and application of this rule by the supreme court in 
Morgan
 that would preclude application of the felony murder rule in the instant case.  Unlike 
Morgan
, the facts of this case do not support the conclusion that the acts constituting the forcible felony of aggravated discharge of a firearm arise from and are inherent in the act of murder itself. 

Based on the facts of this case as demonstrated by the State's evidence, the defendant and his codefendants were not acting in self-defense and it was their criminal acts, including Luckett and Foster firing
 
their guns in the direction of their rivals, the Four Corner Hustlers, that set in motion conduct that eventually resulted in the death of Phillip Matthews.  The victim, Phillip Matthews, was not even present when that gun battle began.  Rather, he was shot at a different location several minutes after the initial exchange of gunfire by the two rival gangs.  The .38- caliber bullet recovered from the victim could not have been fired from either of the codefendants' guns and that evidence demonstrates that, like the victim in 
Pugh
, the victim here could have been shot by return gunfire.
  The Four Corner Hustlers yelled threats and threw a bottle at defendant's car, and codefendants Luckett and Foster discharged their weapons at the rival gang members. 
 Similar to 
Pugh
, it was foreseeable that if Luckett and Foster fired guns in the direction of the Four Corner Hustlers, someone would be likely to return gunfire and, just as likely, someone could at some point be killed.  The evidence could support the conclusion that the conduct of firing the weapons was motivated by an independent felonious purpose other than the killing of Phillip Matthews.  That conduct involved the independent felonious purpose of discharging firearms in the direction of the Four Corner Hustlers, including rival gang members Antoine and Terrance Harris.
  Application of the felony murder rule in the context of this case advances the legislature's concern for protecting the community and deterring criminals from acts of violence.  

Defendant relies on 
People v. Viser
, 62 Ill. 2d 568 (1975),  in support of  his argument that aggravated discharge of a firearm may not be used as the predicate felony for felony murder because the predicate felony involved an intent to kill.  
Viser
, however, holds the opposite.  In 
Viser
, the Illinois Supreme Court considered whether felony murder could be charged when the predicate felony was the aggravated battery that resulted in the victim's death.  
Viser
, 62 Ill. 2d at 578.  The court noted that most felony murders involve an aggravated battery or an assault.  
Viser
 rejected the defense argument that aggravated battery cannot be the underlying felony in a felony murder charge where the aggravated battery is committed against the person who eventually dies.  
Viser
, 62 Ill. 2d at 577.

The supreme court in 
Morgan
 discussed the impact of the factual differences in 
Morgan
 and 
Viser
 in

the context of determining whether a forcible felony can be used as a predicate felony for felony murder.  

"In 
Viser
, the aggravated battery serving as the predicate felony for the felony murder charge against defendants was based upon an incident where the defendants struck and beat the victim.  [Citation.]  The victim died two weeks after the beating 'of pancreatitis caused by severe abdominal injuries he received' during the beating.  [Citation.]  The charges of felony murder arose from the cause and effect relationship between the crime committed – 
aggravated battery – 
and the resulting murder.  See 
People v. Shaw
, 186 Ill. 2d 301, 322 (1998) ('Felony murder depends solely on a cause and effect relationship between the crime committed and the resulting murder to impose liability').

Here, the cause and effect relationship between the crime committed

and the resulting murder is not so clear.  The forcible felonies underlying the charges of felony murder in this case – aggravated battery and aggravated discharge of a firearm – 
were acts that were inherent in, and arose out of, the fatal shootings of Keith and Lila.  It is arguable that it was not the predicate felonies which resulted in and caused the murders of Keith and Lila, but rather that it was the murders of Keith and Lila which gave rise to the predicate felonies."  
Morgan
, 197 Ill. 2d at 446-47.

Unlike 
Morgan
, where the murders of Keith and Lila gave rise to the predicate felonies, in the instant case, the murder of Phillip Matthews did not give rise to the predicate felony of aggravated discharge of a firearm. 
 
The factual context is critical in determining whether the forcible felony can serve as a predicate felony for felony murder. 
 There is sufficient evidence that the acts constituting the predicate felony of discharge of a firearm did not arise from and were not inherent in the murder of Phillip Matthews but, rather, involved conduct with an independent felonious purpose other than the killing of Phillip Matthews.  That conduct involved the independent felonious purpose of discharging firearms at rival gang members of the Four Corner Hustlers which triggered an exchange of gunfire by the rival gangs eventually resulting in the death of Phillip Matthews several minutes later at a different location.  Therefore, based on the facts of this case, the act of discharging firearms can serve as the predicate felony for felony murder.
 
 We find the trial court did not abuse its discretion by instructing the jury on felony murder with the predicate felony of aggravated discharge of a firearm.

      II. SECOND DEGREE MURDER INSTRUCTION

A person commits second degree murder when he commits the offense of first degree murder and at the time of the killing he believes the circumstances to be such that, if they exist, would justify the use of deadly force under the principles of self-defense, but his belief is unreasonable.  720 ILCS 5/9-2(a)(2) (West 1996).  Defendant argues that limiting the jury instructions to felony murder precluded the jury from considering
 
second degree murder where defendant had been charged with intentional and knowing murder and had presented sufficient evidence for the jury to find that, in self-defense, defendant believed deadly force was justified, but such belief was unreasonable.  We note the trial judge gave a self-defense instruction but refused to instruct the jury on the mitigating offense of second degree murder.

The United States Supreme Court has observed that, "[a]s a general proposition[,] a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."  
Mathews v. United States
, 485 U.S. 58, 63, 99 L. Ed. 2d 54, 61, 108 S. Ct. 883, 887 (1988).  If there is evidence that, if believed by the jury, would reduce a crime from first degree murder to some lesser degree of murder, defendant's requested instruction must be given; however, the defendant has the burden of proving that at least "some evidence" exists.  
People v. Austin
, 133 Ill. 2d 118, 125 (1989).  In the instant case, the fact that the judge gave a self-defense instruction demonstrates defendant sustained his burden of proving that some evidence of self-defense exists.  However, the judge's refusal to instruct on second degree murder prevented the jury from finding defendant guilty of second degree murder if the jury found that it was unreasonable to believe that, in self-defense, deadly force was justified.

The State relies on 
People v. Tenner
 to support its argument that a second degree murder instruction is not warranted when the defendant is the aggressor and the defendant's use of force is exerted while defendant is committing a forcible felony.  
People v. Tenner
, 157 Ill. 2d 341 (1993); 720 ILCS 5/7-4(a) (West 1998).  In 
Tenner
, the defendant's conduct in arming himself with a shotgun and preparing ropes with which to bind the victims established that he was the aggressor, he was attempting to commit or was committing the forcible felony of unlawful restraint and the victim was killed during the course of that felony.  
Tenner
, 157 Ill. 2d at 373.  Unlike 
Tenner
, there is sufficient evidence in this case that, if believed by a trier of fact, demonstrates that defendant was not the aggressor.  Moreover, identifying the initial aggressor is a question of fact for the jury to resolve.  
People v. Johnson
, 247 Ill. App. 3d 578, 585 (1993).  When the evidence conflicts on the issue of who initiated the violence, the trial court must instruct the jury on defendant's justifiable defenses that are supported by the evidence.  
People v. Robinson
, 163 Ill. App. 3d 754, 761 (1987).

The State, relying on 
People v. Salgado
, 287 Ill. App. 3d 432 (1997), contends that even if unreasonable belief in justification was available as a defense to defendant and his companions, the evidence did not warrant a second degree murder instruction.  
In 
Salgado
, defendant testified that he confronted the victims because he wanted to "beat them up" and, after initiating the violence, he fired at the victims in their car, killing the passenger.  Defendant contended that he only meant to scare them and fired at the backseat.  The court held in 
Salgado
 that the defendant and his two companions were the aggressors, attacking the unarmed victims with a gun and a baseball bat.  Affirming the trial court's refusal to instruct the jury on second degree murder, the appellate court found that there was no evidence defendant was in any imminent danger; rather, the evidence showed that the killing was "cold and senseless." 
 
Salgado
, 287 Ill. App. 3d at 446. 

Unlike 
Salgado
, in the instant case, there is evidence the defendant and his companions were in imminent danger of death or great bodily harm.  In addition to the testimony of the defendant, there was evidence that corroborated the fact that deadly force was used by defendant and his companions in self-defense against the violence initiated by the Four Corner Hustlers.  The question is whether the evidence in this case is sufficient to warrant a second degree murder instruction on the charges of intentional and knowing murder.  In determining whether defendant has established sufficient evidence entitling him to an instruction on second degree murder, we may consider factors including the defendant's intent or motive, recent history of violence between the parties, previous relationship between the parties, the type of wound suffered by the victim, any contact between the defendant and victim, and the circumstances surrounding the incident.  
People v. Everette
, 141 Ill. 2d 147, 158 (1990).  With these factors in mind, we determine whether the evidence warranted an instruction on second degree murder.

The record reflects that Antoine Harris and defendant were involved in a previous altercation in the same neighborhood on October 6, 1995, four days before the shooting in this case.  According to defendant, Antoine threatened him, shot at him, and tried to kill him on October 6, 1995.  It is uncontested that as a result of this incident an ambulance and the police were called by the defendant.  Two prosecution witnesses, Antoine Harris and defendant's girlfriend, Anita McClinton, corroborated the fact that Antoine had "angry words" with defendant on October 6, 1995.  Anita McClinton stated that Antoine threw up gang signs and ordered defendant out of the neighborhood during that altercation.  Emergency technician Morrin indicated he responded to a call on October 6, 1995, and defendant at that time believed he had been shot in the chest.  Morrin was unable to find an entrance or exit wound; however, defendant was taken to the hospital.  Defendant had Antoine arrested as a result of this altercation.

Four days after this altercation, the shooting occurred in this case.  The evidence is uncontroverted that, at the time of the shooting, there was animosity between the defendant and the Harris brothers, the defendant was in rival gang territory, and he was outnumbered by at least three to one.
  Defendant testified that he asked Luckett and Foster to accompany him to his girlfriend's house which was located in rival gang territory because he had problems with the Harris brothers and feared them.  That fear was based on the previous threats and altercations, including Antoine shooting at him four days earlier.  Defendant denied any plan or intent to shoot at Four Corner Hustlers.  When he drove across Halsted Street, defendant heard Antoine scream "GDK," a threat meaning "Gangster Disciple Killer."  Defendant then heard a bottle strike his car and he stopped the vehicle to check for damage.  Luckett and Foster got out of the car.  Defendant testified that he next heard shots fired, and because he believed he was in danger, feared for his life and feared he might be shot, he drove off alone.  As defendant drove out of the area, he heard 9 or 10 more shots.  Defendant's testimony that Antoine shot at him four days before this confrontation, together with his testimony that the Four Corner Hustlers gathered in force, ran at his car, shouted deadly threats, and threw a bottle, followed by shots fired, provided evidence of aggressive, threatening behavior in support of defendant's belief that he was in imminent danger.  The testimony of State witness Antoine Harris corroborated defendant.  Antoine admitted there were 9 or 10 Four Corner Hustlers with him.  Antoine corroborated defendant's testimony when he admitted "jogging after Toney's car, yelling threats," as well as throwing a bottle at defendant's car.  Antoine indicated he did not like defendant coming into his territory near Halsted Street and 123rd Street.  Although they denied having guns that night, the Harris brothers conceded that their gang had guns.

Defendant's testimony was further corroborated in part by some of the other State
 witnesses and by the firearm evidence.  Terrance Harris corroborated the fact that his brother Antoine threw a bottle and he heard 15 or 16 shots coming from different directions.  Bobby Roberson, a State witness, supported the defense theory that persons other than Foster and Luckett were firing weapons.  During a period of approximately 15 minutes, Roberson heard shots fired from three separate locations.  First he heard a single shot, then several minutes passed and he heard 20 shots, time passed and he heard 8 more shots followed by 5 shots.  He testified that bullets were bouncing off houses, gates, and fences.  Phillip Matthews was not part of the group involved in the original confrontation and shooting, but was shot several minutes later at a different location.  Defendant testified that after Luckett and Foster got out of the car, he heard two gun shots, feared for his life and immediately drove away alone.  The recovery of bullets from the scene, as well as a .38-caliber bullet recovered from the victim's body that did not match either the rifle or the 9 millimeter brought to the scene by Luckett, supported defendant's testimony that shots were fired by individuals other than Foster and Luckett.  The firearm evidence was further corroboration for defendant's statement that he felt threatened and feared he might be shot.  We note, under similar circumstances in 
People v. Thomas
, 185 Ill. App. 3d 1050 (1989), the court found sufficient evidence to warrant instructing the jury on voluntary manslaughter (now second degree murder) based on defendant's testimony that he felt threatened and heard shots coming from the victim's direction.  
Thomas
, 185 Ill. App. 3d at 1054.

In the instant case, the fact the trial judge found the evidence warranted giving the jury an instruction on self-defense is significant in resolving the question of whether the jury should have been instructed on second degree murder for the intentional and knowing murder charges.  When the evidence supports giving the jury an instruction on the justifiable use of force in self-defense, then an instruction for second degree murder should likewise be given.  
People v. Lockett
, 82 Ill. 2d 546, 552 (1980).  In 
Lockett
, the court determined that a self-defense and voluntary manslaughter (now second degree murder) instruction should be given when any evidence is presented showing the defendant's subjective belief that use of force is necessary.  
Lockett
, 82 Ill. 2d at 552.  The 
Lockett
 court noted the judge's duty is to determine if any evidence is presented that the defendant had a subjective belief that use of force is justified in self-defense, while it is the duty of the jury to weigh the evidence, determine if the belief existed, and if so, determine whether that belief was reasonable or unreasonable.  
Lockett
, 82 Ill. 2d at 552-53.

The trial judge recognized that there were competing theories factually at issue in this case.  Allowing the jury to be instructed on self-defense indicates that the trial judge found the evidence sufficient to warrant instructing the jury regarding defendant's subjective belief  that the use of force was justified in self-defense.  Based on our review of the record, there was sufficient evidence to support this decision by the trial judge to give the jury an instruction on the justifiable use of force in self-defense.  Applying the principles articulated in 
Lockett
, it was the jury's duty to weigh the evidence and determine, if the belief existed, and if so, whether defendant's belief that use of force was justified in self-defense constituted a reasonable or unreasonable belief.  
Lockett
, 82 Ill. 2d at 552-53.  However, the refusal by the trial judge to instruct the jury on second degree murder prevented the jury from determining whether defendant's subjective belief that the use of force was justified in self-defense was a reasonable or unreasonable belief.  

We cannot reconcile the trial court's finding sufficient evidence to warrant a self-defense instruction, and thereby allowing the jury to consider whether defendant's subjective belief was reasonable, with the trial court's refusal to allow the jury to consider whether that belief was unreasonable.  Limiting the jury instructions to felony murder precluded the jury from considering second degree murder where defendant had been charged with intentional and knowing murder and had presented sufficient evidence for the jury to find that, in self-defense, defendant believed deadly force was justified, but such belief was unreasonable.  Refusal to instruct the jury on second degree murder on the charges of intentional and knowing murder prevented the jury from returning a verdict of guilty on the mitigating offense of second degree murder based on the unreasonable belief that use of force was justified in self-defense.

Regarding the defendant's challenge to the trial court's order refusing to instruct the jury on second degree murder on the charges of intentional and knowing murder, we find 
People v. Morgan
, 197 Ill. 2d 404 (2001), instructive.  In 
Morgan
, second degree murder instructions were given on the charges of intentional and knowing murder, but refused on the felony murder charge.  At issue in 
Morgan
 was the State's challenge to the appellate court's finding that the trial court erroneously barred second degree murder instructions on the felony murder counts.  
Morgan
, 197 Ill. 2d at 450.  In the instant case, at issue is the defendant's challenge to the trial court barring second degree murder instructions, not on felony murder, but on the charges of intentional and knowing murder. 
 

The supreme court, in addressing the State's challenge in 
Morgan
, specifically noted the language of section 9-1(a)(3) of the Criminal Code which states that a person commits first degree murder if, in performing the acts which caused the death, "he is attempting or committing a forcible felony other than second degree murder."  720 ILCS 5/9-1(a)(3) (West 1996) and concluded as follows:

"It would be anomalous, then, to give a second degree murder instruction with regard to a charge of felony murder.  Pursuant to the plain language of the statute, it is clear that the provocation defense of second degree murder is not available to a charge of felony murder.  Accordingly, we reverse the appellate court's finding that a second degree murder instruction should have been given on the charges of felony murder, and affirm the trial court's order declining to give that instruction."  
Morgan
, 197 Ill. 2d at 452.  

Unlike 
Morgan
, defendant does not rely on a provocation defense  (720 ILCS 5/9-2(a)(1)) but, rather, relies on the claim that he acted unreasonably in self-defense (720 ILCS 5/9-2(a)(2)).  The 
Morgan
 facts do not involve mitigation based on an unreasonable yet actual perceived need for self-defense.  However, for the same reasons articulated in 
Morgan
, based on the plain language of section 9-1(a)(3) of the Criminal Code, we find that the unreasonable belief in justification defense of second degree murder is not available to a charge of felony murder.
  
Therefore, in the instant case, no second degree murder instruction should be given regarding  felony murder. 
 We are mindful that in 
Morgan
 the supreme court did not criticize the fact that second degree murder instructions were given on the charges of intentional and knowing murder, resulting in Morgan's conviction for the second degree murder of his grandfather, Keith; rather, the supreme court affirmed that conviction.  
Morgan
 found the provocation defense of second degree murder was available to a charge of intentional or knowing murder, but not available to a charge of felony murder.  
Morgan
, 197 Ill. 2d at 452.  We note, in the instant case, defendant did not seek a second degree murder instruction on felony murder but, rather, on the charges of intentional and knowing murder based on the evidence.  Our conclusion, that no second degree murder instruction should be given on felony murder, therefore, does not resolve the issue in this case which is whether, based on the evidence, a second degree murder instruction should have been given on the charges of intentional and knowing murder when belief of justifiable use of force is an issue. 

In the instant case, a
t the instruction conference, defense counsel objected to not being allowed to submit a second degree murder instruction on the charges of intentional and knowing murder.  He was not seeking a second degree murder instruction on felony murder.  Defense counsel argued that limiting the jury instructions to felony murder erroneously precluded the jury from considering second degree murder because defendant had been charged with intentional and knowing murder, relied on self-defense, raised the issue of whether the belief in justifiable use of force was reasonable or unreasonable, and offered evidence of the unreasonable belief in justifiable use of force in support of instructing the jury with a second degree murder instruction on the charges of intentional and knowing murder.

The committee notes to Illinois Pattern Jury Instructions, Criminal, No. 7.06A (3d ed. Supp. 1996)

(hereinafter IPI Criminal 3d No. 7.06A (Supp. 1996))
 recognize that there can be sufficient evidence in the record to support instructing the jury on both felony murder and second degree murder when belief of justifiable use of force is an issue.  These committee notes indicate as follows:

"Pursuant to section 9-2(a) *** the offense of second degree

murder may not be based upon first degree murder under section 9-1(a)(3) (felony murder).  ***  [However,] [w]hen first degree murder under Section 9-1(a)(3) [(felony murder)] and first degree murder under Section 9-1(a)(1) or 9-1(a)(2) [(intentional, knowing murder)] are both charged and the court is also instructing on the lesser offense of second degree murder, Instruction 7.02A should be used for the count under Section 9-1(a)(3), [(felony murder)] and Instruction 7.06A should be used for the other first degree murder counts [(intentional, knowing murder)] upon which second degree murder may be based."  IPI Criminal 3d No. 7.06A (Supp. 1996), Committee Notes at 68. 

In the instant case, defendant was charged with one count of intentional murder and one count of knowing murder.  For those first degree murder counts upon which second degree murder may be based, defendant offered IPI Criminal 3d No. 7.06A (Supp. 1996), but the trial judge refused to give the second degree murder instruction.  Rather, the jury was instructed on uncharged felony murder.  
               

Consistent with the approach articulated in the committee notes to the Criminal Illinois Pattern Jury Instructions, in 
Morgan
, the supreme court noted that second degree murder instructions were given only on the charges of intentional and knowing murder and not on the felony murder charges.  
Morgan
, 197 Ill. 2d at 449.  In affirming Morgan's conviction for the second degree murder of his grandfather, the court recognized that "in convicting [the defendant] of second degree murder, the jury must have believed [defendant] was guilty of the intentional or knowing murder of Keith, but that one of the mitigating defenses set forth in the second degree murder statute was present" and the jury, therefore, rejected the State's felony murder theory as to defendant's grandfather.  
Morgan
, 197 Ill. 2d at 449. 

In 
Morgan
, as in the instant case, there were competing theories offered by the prosecution and defense as to the circumstances under which the shootings occurred.  In 
Morgan
, unlike the instant case, the jury was instructed that Morgan had been charged with knowing, intentional and felony murder of his grandmother and grandfather.  The jury received verdict forms for first degree and second degree murder.  
Unlike the instant case, where no second degree murder instructions were given, in 
Morgan
, regarding both his grandmother and grandfather, second degree murder instructions were given on the charges of intentional and knowing murder, but not on the felony murder charges.  
Morgan
, 197 Ill. 2d at 449.  The jury in 
Morgan
 found the defendant guilty of the first degree murder of his grandmother Lila and the second degree murder of his grandfather Keith.
  The jury in 
Morgan
 was instructed on the competing theories supported by the evidence.  In the instant case, unlike 
Morgan
, the jury received a felony murder instruction, but no second degree murder instruction was given on the charges of intentional and knowing murder.  The jury, in the instant case, was not instructed on the competing theories supported by the evidence.  The supreme court in 
Morgan
 upheld the convictions for first and second degree murder.  
Morgan
 reaffirms the proposition that intentional or knowing murder can be mitigated to second degree murder; however, the provocation defense of second degree murder is not available to a charge of felony murder.  
Morgan
, 197 Ill. 2d at 449, 452.

T
he jury should be instructed on competing theories where the evidence is in conflict and the record supports such competing instructions.  
Lockett
, 82 Ill. 2d 546, 552-53 (1980).  In the instant case, the trial judge was correct in not giving a second degree murder instruction regarding felony murder.  The unreasonable belief in justification defense of second degree murder is not available to a charge of felony murder.    Regarding the trial court's  refusal to give a second degree murder instruction requested by the defense on the charge of intentional and knowing murder, we note that in determining whether the evidence was sufficient to warrant a second degree murder instruction,  we have considered the 
Everette
 factors, as previously discussed, including the defendant's intent, motive, recent history of violence, and previous relationship between the parties, the type of wound suffered by the victim, whether there was any contact between defendant and the victim, and the circumstances surrounding the incident.
  Defendant's testimony that Antoine Harris shot at him four days earlier, together with his testimony that the Four Corner Hustlers gathered in force, ran at his car, shouted deadly threats and threw a bottle, followed by shots fired, provided evidence of aggressive, threatening behavior in support of defendant's belief that he was in imminent danger.  Based on the recent history of violence between the rival gangs, the evidence of a confrontation between Antoine Harris and defendant four days before the shooting in this case, the testimony of defendant and some of the testimony of the State's witnesses, as well as the firearm evidence, we conclude the record demonstrates sufficient evidence to warrant an instruction on second degree murder.

By all witness accounts of the incident, it was Foster and Luckett who fired weapons while defendant remained in the car.  Under the law, defendant is accountable for the conduct of Foster and Luckett.  It was for the jury, however, with the benefit of the proper instructions, to decide the nature of that conduct, whether the killing was felony murder, second degree murder or justified as self-defense.  Belief of justifiable use of force was a critical issue in this case.  Whether under the circumstances at the time of the killing defendant and his companions, out of fear for their lives, believed that the use of deadly force was justified, but this belief was unreasonable, is a determination to be made by the  trier of fact.  By refusing to provide the jury a second degree murder instruction, the trial judge prevented the jury from resolving this question.  The refusal to so instruct was an abuse of discretion which unfairly prejudiced the defendant.  Based on the law and the evidence, we find the trial judge erred in not giving the jury a second degree murder instruction because defendant was charged with intentional and knowing murder and there was sufficient evidence to warrant a second degree murder instruction.

We note parenthetically that a separate jury, which resolved codefendant Foster's case before defendant went to trial, received a second degree murder instruction and returned against Foster a verdict of guilty for second degree murder.  It was not disputed that Foster and Luckett, not defendant, discharged firearms while defendant remained in the driver's seat of the car.  Defendant drove away alone as the shooting continued.  Defendant, the driver of the car, was convicted of murder, while Foster, a codefendant who discharged a firearm, was convicted of second degree murder.  Unlike the jury in defendant's case, Foster's jury had the benefit of a second degree murder instruction to resolve the issue regarding whether the belief of justifiable use of force was reasonable or unreasonable.  While the verdict for second degree murder returned by the jury against Foster plays no part in our analysis, we cannot say based on the record that the result in this case would not have been different had the jury been properly instructed.

III. SUFFICIENCY OF THE EVIDENCE 

Defendant, relying on 
People v. Lowery
, 281 Ill. App. 3d 706 (1996), argues he cannot be held accountable for felony murder because the prosecution failed to prove beyond a reasonable doubt the "identity of the actual shooter."
  T
he Illinois Supreme Court reversed the appellate case relied upon by defendant and in reviewing the felony murder doctrine noted that Illinois follows the "proximate cause" theory of liability for felony murder, that is, liability attaches "for any death proximately resulting from the unlawful activity – 
notwithstanding the fact that the killing was by one resisting the crime."  
People v. Lowery
, 178 Ill. 2d 462, 465 (1997).  As 
Lowery
 provides, who fired the fatal shot is irrelevant under the theory of felony murder.  
Lowery
, 178 Ill. 2d at 469-70.  Regarding sufficiency of the evidence, the court views the evidence in the light most favorable to the prosecution and determines if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
People v. Batchelor
, 171 Ill. 2d 367, 376 (1996).  Using that standard, we conclude there was sufficient evidence to support the jury finding defendant guilty beyond a reasonable doubt of felony murder.

IV. ADMITTING TWO WEAPONS INTO EVIDENCE  
 

Defendant next argues that the trial court erred in admitting the rifle and 9-millimeter handgun into evidence.  Defendant did not object to this evidence and waived
 review of this issue.  
People v. Enoch
, 122 Ill. 2d 176 (1988).  Waiver aside, the trial court properly admitted the weapons into evidence.  A weapon is admissible if it is connected both to the crime and to the defendant.  
People v. Free
, 94 Ill. 2d 378, 415 (1983).  Although the weapon need not be the exact weapon used in the crime, the evidence must show that the weapon was at least suitable for the commission of the crime.  
Free
, 94 Ill. 2d at 415-16.  Examples of evidence that renders a weapon suitable for the crime are physical evidence that connects the weapon to the crime scene or victim (
Free
, 94 Ill. 2d at 415-16) and eyewitness testimony that the weapon was identical to the weapon used by the perpetrator (
People v. Lee
, 242 Ill. App. 3d 40, 42 (1993)).  In this case, the two admitted weapons were suitable for the commission of the crime based on both the physical evidence and witness testimony.  Antoine Harris identified the rifle as the weapon that codefendant Foster pointed and shot at him after Foster exited defendant's car.  The police, accompanied by codefendant Luckett, recovered both the rifle and the 9-millimeter handgun within hours of the crime.  Fired cartridge casings recovered from the crime scene were consistent with the rifle.

Defendant contends that the firearm expert's testimony established that neither the rifle nor the handgun was suitable for the commission of the crime because the bullet retrieved from the victim's body, according to the expert's testimony, could not have been fired from the rifle or the 9- millimeter handgun.  While the bullet recovered from the victim did not match the two weapons, the medical examiner testified that the victim sustained two or three separate gunshot wounds and only the bullet recovered remained in the victim's body.  The other bullets, including the bullet that struck the victim's brain and caused the fatal wound to the victim, exited his body and traveled at a high velocity.  The rifle was suitable for the commission of the crime because the path of the bullet that hit the victim's brain was consistent with the speed of a bullet fired from the rifle.  The evidence further connected the weapons to the defendant.  The defendant denied involvement in the shooting, and only after the police showed the defendant the rifle and the 9-millimeter handgun did he admit involvement.  See 
People v. Washington
, 127 Ill. App. 3d 365, 383 (1984).  Defendant's statement identified both weapons as the weapons Luckett obtained from defendant's house and brought with him.  The weapons corroborated defendant's statement.  The trial court properly admitted the rifle and 9-millimeter weapon because the State presented sufficient evidence to connect the weapons both to the crime and to the defendant.

V. CLOSING ARGUMENT

Defendant contends that comments during the State's closing arguments were improper.  Although defendant failed to object to all of these comments during trial, we review them in light of defendant's remand for retrial.  Defendant alleges the State erred in arguing that the rifle fired the shot that killed the victim and that defendant turned over the weapons to the police.  A prosecutor may comment on the evidence and may draw all legitimate inferences from the evidence, even if unfavorable to the defendant.  
People v. Harris
, 196 Ill. App. 3d 663, 675 (1990).  In addition, attorneys are entitled to wide latitude in closing argument to discuss the evidence.  
People v. Chavez
, 265 Ill. App. 3d 451, 459-60 (1994).

We find no error in the prosecutor's comments regarding the rifle.  The medical examiner testified that the fatal bullet exited the victim's body and, because of its path, traveled at a high rate of speed.  The firearm expert testified that fired bullets from the rifle travel at a high rate of speed and therefore a reasonable inference from the evidence is that a bullet from the rifle killed the victim.  Regarding the guns that were turned over to the police, the prosecutor specifically stated, "We know for sure this was out there. They turned in this but when they turned it in, there's no clip and it's inoperable."  The testimony established Luckett accompanied the police to where the weapons were located.  The prosecutor's comment was properly based on the evidence and reasonable inferences therefrom.

Defendant next alleges the following statements were error.  "Now, Phillip Matthews was a victim.  He was a victim of gang life.  This Phillip Matthews.  But he's a victim of Gangster Disciple's actions."  The State's comment properly referred to the evidence.  Both parties acknowledge that the shootings in this case involved street gang rivalry.  It is not error for the prosecution to comment on the evil results of gang activity where as here such activity is related to the crime charged.  
People v. Smith
, 141 Ill. 2d 40, 62 (1990).  Defendant's further argument that the prosecutor indicated the shooting  was motivated by a "stupid" argument over "tennis shoes, Starter jackets, and machismo" is inaccurate.  The prosecutor made a general comment based on common sense and everyday experience that gang problems in general are stupid and over such things as tennis shoes, Starter jackets and who is more macho.  The prosecutor explained that the State is not required to prove motive by stating that "you are not going to find an instruction that says the State has to prove motive.  We don't have to prove it.  We don't have to tell you why he did this."  We are mindful that it is improper to attribute motive without a factual basis.  
People v. Davis
, 278 Ill. App. 3d 532, 542 (1996).  The prosecutor did not attribute motive for the shootings to any particular factual basis, but properly told the jury that while gang problems can be motivated by silly and stupid reasons, the law does not require the State to prove motive.

Defendant next alleges error by the prosecutor's statement in rebuttal that "[d]efendant doesn't want you to focus on the real issue" and contends that the State improperly attacked defense counsel.  During final arguments, the State may not argue that defense counsel has lied, fabricated a defense, or suborned perjury.  
People v. Emerson
, 97 Ill. 2d 487 (1983).  The State, however, may comment or respond to arguments made by defense counsel in closing argument.  
People v. Carroll
, 260 Ill. App. 3d 319, 347 (1992).  We note, defense counsel directly asked the prosecutor to answer how the forensic evidence supports her theory of a "commando raid."  In response, the prosecutor stated that defense counsel was focusing on the wrong issue and asked the jury to focus on other evidence.  The prosecutor never suggested that defense counsel was lying, making things up, or fabricating a defense.  Therefore, the prosecutor's argument was not error, but invited comment.

Defendant contends that the prosecutor misstated the presumption of innocence when she argued that "[defendant] is no longer cloaked in innocence.  We have torn that from him."  In 
People v. Keene
, 169 Ill. 2d 1, 24 (1995), our supreme court held that it was error for the prosecutor to argue that defendant's " 'cloak of innocence' " had been " 'shredded and ripped and pulled [off].' "  The court noted that the defendant enjoys the presumption of innocence until the jury decides during 
deliberations
 that defendant is guilty of the charged offenses.  
Keene
, 169 Ill. 2d at 26.  The State's limited reference to the presumption of innocence ameliorated the extent of harm if any.  However, on retrial this comment or any similar comment suggesting that the presumption of innocence can be eliminated before a jury returns a verdict, including but not limited to the presumption being described as torn off, shredded, ripped or pulled off, should not be repeated. 

Finally, the defendant claims the prosecutor's argument about defendant's initial statements to the police were improper comment on defendant's postarrest silence.  The prosecution may not cross-examine a defendant about his initial postarrest silence or infer guilt from such silence.  
Doyle v. Ohio
, 426 U.S. 610, 619, 49 L. Ed.2d 91, 98, 96 S. Ct. 2240, 2245 (1976).  The 
Doyle
 rule does not apply to questions about a defendant's prior inconsistent statements.  When a defendant does not remain silent after being advised of his 
Miranda
 rights, his failure to offer an exculpatory story to police may be used for impeachment if his arrest statements go beyond mere denial of knowledge and are inconsistent with his exculpatory trial testimony.  
People v. Mischke
, 278 Ill. App. 3d 252 (1995).  Once a statement is made, impeachment by omission is not precluded by the 
Doyle
 rule.  
People v. Garza
, 276 Ill. App. 3d 659 (1995). 

In this case, the prosecutor did not comment on defendant's postarrest silence but on the inconsistent statements defendant made to the police.  Defendant made statements to the police.  During defendant's cross-examination, the prosecution questioned defendant on facts that defendant did not include in statements he made to the police, but that he added to his trial testimony, such as his claim 
that shots were fired at him.  This was proper cross-examination.  
Mischke
, 278 Ill. App. 3d at 265.  It is equally proper for the prosecution to comment on defendant's inconsistent statements during closing argument.  Therefore, we do not find error in the prosecution's comment on defendant's postarrest statements.

                                                                VI.  CONCLUSION 

Based on the facts of this case the predicate felony of aggravated discharge of a firearm involved
 
conduct with an independent felonious purpose other than the killing of Phillip Matthews.  That conduct involved the independent felonious purpose of discharging firearms at rival gang members which triggered an exchange of gunfire eventually resulting in the death of Phillip Matthews.  Therefore, the trial judge properly instructed the jury on felony murder with a predicate felony of aggravated discharge of a firearm.  We also affirm the trial court's order declining to give a second degree murder instruction for felony murder; the justification defense of second degree murder is not available for felony 
murder. 

However, the justification defense is available for intentional and knowing murder, and defendant presented sufficient evidence for the jury to find that, in self-defense, defendant believed deadly force was justified, but such belief was unreasonable.  Using the Criminal Illinois Pattern Jury Instructions, the jury should be instructed on competing theories when the evidence is in conflict and the law and the facts support such competing instructions.  The committee notes to
 Illinois Pattern Jury Instructions, Criminal, No. 7.06A recognize that there can be sufficient evidence in the record to support instructing the jury on both felony murder and second degree murder when belief of justifiable use of force is an issue.  It was an abuse of discretion for the trial judge, based on the facts of this case, to refuse to instruct the jury on the mitigating offense of second degree murder for intentional and knowing murder because defendant was charged with intentional and knowing murder and the evidence warranted a second degree instruction.  Belief of justifiable use of force was a critical issue in this case and we find sufficient evidence in the record to support instructing the jury on both felony murder and second degree murder.  On remand the jury should be instructed consistent with the 
Criminal Illinois Pattern Jury Instructions. 

For the reasons previously discussed, the judgment of the circuit court of Cook County is reversed and this cause is remanded for a new trial consistent with this opinion.  We decline to address the consecutive sentencing issue because we remand for retrial.  The record contains sufficient evidence
 for the jury to have found the defendant guilty beyond a reasonable doubt.  There is no double jeopardy impediment to a new trial.  
People v. Porter
, 168 Ill. 2d 201, 215 (1995).  We also note that we have made no finding as to defendant's guilt that would be binding on retrial.  
People v. Jones
, 175 Ill. 2d 126, 134 (1997).   

Reversed and remanded.

TULLY and GALLAGHER, JJ., concur.  

FOOTNOTES
1: 
In the exercise of the supreme court's supervisory authority our original opinion in this case was vacated and we were directed to reconsider in light of 
People v. Morgan
, 197 Ill. 2d 404 (2001).