THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
WILLIAM JOHNSON, Defendant-Appellant.

First District (5th Division)   No. 85—0949

Opinion filed September 30, 1987.

Paul P. Biebel, Public Defender, of Chicago (Mark Stein, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a jury trial defendant William Johnson was convicted of three counts of delivery of a controlled substance and was sentenced to a 30-month period of probation. On appeal defendant contends: (1) the prosecution improperly used its peremptory challenges to exclude all blacks from the jury; and (2) the trial court erred when it failed to require the United States Attorney to reveal information about an ongoing investigation of the Harvey police department which employed a key prosecution witness.

We affirm defendant's convictions but remand the cause for further proceedings.

■ It is undisputed that in the jury selection process the prosecution exercised 7 of its 10 peremptory challenges to exclude black potential jurors, with the result that the jury trying this black defendant was all white. Defense counsel asked the court to ascertain the bases for these challenges. The prosecutor responded that he was not obligated to explain them. The trial court reluctantly agreed that no such explanation was required under the State of Illinois law at that time. Given this record it is clear that defendant is entitled to a hearing pursuant to *Batson v. Kentucky* (1986), 476 U.S. 79, 90 L. Ed. 2d 69, 106 S. Ct. 1712, and *Griffith v. Kentucky* (1987), 479 U.S. 314, 93 L. Ed. 2d 649, 107 S. Ct. 708. Accordingly, we must remand the cause for a *Batson* hearing.

■ We next consider defendant's contention that the court erred in failing to require the United States Attorney's office to reveal evidence of its investigation of the Harvey police department. Consideration of this issue necessitates a review of the pertinent trial evidence.

The State's key witness was Andre Davis, a Harvey police officer on special assignment to the Northeastern Metropolitan Enforcement Group (MEG). According to Davis, on September 24, 1983, he was informed by another Harvey police officer, Robert Robins, that a narcotics seller was operating in downtown Harvey. At 2:45 p.m. Robins and Davis met at a downtown Harvey street corner where Robins stated that defendant would meet them at 3 p.m. Davis was in plain clothes, driving an unmarked car, but Robins was in uniform. Defendant walked up to them and told Davis he heard he was looking for drugs. According to Davis defendant then sold him, for $10, six tablets subsequently found to contain .7 grams of phenobarbital. This sale was conducted in Robins' presence. At trial Davis denied ever seeing defend-

ant before that date but he was impeached with his preliminary hearing testimony that he had seen him before. Davis also admitted that two different lists of prerecorded bills used in this transaction conflicted as to the denominations of bills used. On one list Davis had indicated he used a $10 bill. On the other list he indicated use of a $5 bill and five singles.

Davis further testified that on September 30, 1983, at 4:30 p.m. he met with defendant in the Harvey library parking lot. This meeting was observed by MEG Officers Ron Michalski and George Murray, stationed in separate surveillance cars. The defendant entered Davis' car and after some bargaining they agreed to a sale of 30 tablets for $40. On defendant's instructions they drove to a nearby location. Defendant went into a building and emerged with a manila envelope which he gave to Davis in return for $40. Subsequent analysis of tablets in the envelope established that they contained 3.6 grams of phenobarbital.

On October 3, Davis spoke by telephone with defendant, who offered to sell him 100 tablets for $200. They arranged to meet at the Harvey public library at 1 p.m. the next day. The following day MEG agents Michalski, Murray and Wesley Thompson set up surveillance in the library parking area. Davis waited at the scene in his undercover vehicle. Defendant walked past the car, looked around, and then got in. Defendant gave Davis a manila envelope and a paper packet, describing the latter as a free sample. Davis gave him $200 and asked him to count it. Davis then gave an arrest signal, the other officers approached, and defendant was arrested after a scuffle. The manila envelope was subsequently found to contain 11.9 grams of phenobarbital.

The State did not present the testimony of Robins, the uniformed police officer who allegedly participated in the first drug purchase. The State did, however, present the testimony of two of the three surveillance officers, Michalski and Thompson. Michalski testified that on September 30 he saw defendant enter Davis' car and then saw the two men drive to the nearby YMCA. Defendant went into that building for 10 minutes and then walked up to Davis' car and leaned in Davis' open window. Contrary to Davis' testimony concerning the delivery of a manila envelope, Michalski stated that he saw nothing in defendant's hand. Davis subsequently showed him the manila envelope containing pills.

Michalski testified that he also observed the October 4 incident. He saw the defendant walk past Davis' car, look in all directions, and then enter the car. Two minutes later Davis gave the arrest signal. When Michalski reached the car he saw Davis with cash in one hand and an envelope in the other. During the ensuing struggle defendant cut his

head on the side of the car.

Thompson also testified that on October 4 he observed defendant walk past Davis' car, look around, and then get in the car. After the arrest signal was given, defendant hit his head on the side of the car while resisting arrest.

Defendant, 56 years old at the time of trial, testified that he lived at the YMCA Senior Citizen's Home in Harvey. As the result of a series of strokes he walked with a cane and had a speech impediment. His doctors had prescribed phenobarbital and dilantin because of his seizures. According to defendant, one of his hobbies was to go to Harvey city council meetings and criticize "bum politicians." He had frequently criticized the Harvey police department. In the last election defendant, while campaigning for a candidate, was accused by a citizen of being drunk, apparently because of his speech impediment. He went to the police and informed them of his medical use of phenobarbital.

Defendant testified that in September 1983 he showed Officer Jackson an advance copy of a letter he was submitting for publication to a local newspaper. Officer Davis interrupted their conversation to ask what defendant had against Harvey police chief Bruce Terry. The letter was subsequently published and was submitted into evidence, although it has not been included in the record on appeal.

Defendant testified that on September 24, 1983, he was sitting on a park bench when Officer Robins approached, saying he wanted defendant to meet someone. He then introduced Davis to him. Davis asked defendant if he knew where he could get some pills. However, defendant rebuffed this, telling Davis he knew where he could get "a good killing."

With respect to the September 30 encounter, defendant testified that Davis approached him from Davis' car and again asked about obtaining drugs. Defendant walked away and went into the library. Defendant denied ever talking to Davis on the telephone. He also denied ever getting in Davis' car that day.

Defendant further testified that on October 4 he had just copied a poem of his at the library and was heading home when Davis called him over to his car. Davis again brought up the subject of drugs. At this time defendant was thrown to the ground and arrested. Defendant denied ever giving or selling any drugs to Davis.

Several witnesses, including Roy Lane, a former candidate for the offices of Harvey commissioner and mayor, testified that defendant had a good or excellent reputation in the community.

Testifying in rebuttal, Chief of Police Bruce Terry denied participating in any plan to frame defendant. Terry did concede that he had

been present at meetings when defendant had been critical of the police department.

In imposing the sentence of probation on defendant the court noted the testimony that a uniformed Harvey police officer was present at the first sale, finding that this fact "boggles the mind." The court also alluded to defendant's criminal record, finding it not to be a negative factor. In his youth defendant had served prison terms for auto theft and assault and battery with intent to kill, but his last contact with the law was in 1952, at the age of 24.

After defendant's conviction a newspaper report indicated that the United States Attorney's office was investigating the Harvey police department concerning its conduct of drug raids. Defendant's counsel filed a subpoena *duces tecum* on the United States Attorney's office seeking "[a]ny and all reports, notes, memos, etc., concerning any and all investigations" of Davis, Michalski, and Thompson. The United States Attorney's office sought to quash the subpoena, citing in part the need to protect its ongoing investigation and its informants. Defendant's counsel then requested that the court examine the materials *in camera* to determine their relevance. The trial court, however, only required that office to disclose any material directly related to the police conduct in defendant's case. The United States Attorney's office acceded to this request, subsequently informing the court that it had no such information.

We find that, as to any Federal record relating to Andre Davis, the court abused its discretion in summarily narrowing the scope of the subpoena without availing itself of an *in camera* inspection. (See *Marshall v. Elward* (1980), 78 Ill. 2d 366, 399 N.E.2d 1329.) In this cause the key State evidence came from Andre Davis. The other officers who testified could only corroborate the facts of the meeting with defendant. They witnessed none of the alleged drug exchanges. The one officer who, according to Davis, participated in one of the drug transactions while in uniform was Robert Robins, and he was not called to testify by the State. As we have noted, the trial court found this aspect of the State's case troublesome.

Defendant admitted meeting with Davis but denied any drug transaction. His whole defense was anchored in the contention that the Harvey police department had reason to frame him. Under these circumstances it is clear that any evidence of abuse of office by Andre Davis could have been helpful to defendant. It is also clear that evidence of prior misconduct in office by Davis would have been admissible at trial as relating to bias and motive. *People v. Phillips* (1981), 95 Ill. App. 3d 1013, 420 N.E.2d 837.

■ We have already determined that the cause must be remanded for a *Batson* hearing. We further hold that on remand the trial court should enforce defendant's subpoena as it relates to any records concerning Andre Davis' involvement in the alleged Harvey police department's misconduct investigated by the United States Attorney's office. The court should conduct an *in camera* examination of any such material and should determine what material, if any, should be disclosed to defendant. At that time the court may, of course, evaluate any assertions of privilege by the United States Attorney's office. (*Marshall v. Elward* (1980), 78 Ill. 2d 366, 399 N.E.2d 1329.) If new evidence is disclosed to defendant, then defendant may renew his motion for a new trial.

For the reasons set forth in this opinion defendant's convictions and sentence are affirmed but the cause is remanded for further proceedings. In addition to the *in camera* proceedings described above, the trial court shall hold a *Batson* hearing. If the court finds that a *prima facie* showing of purposeful discrimination on the basis of race has been established, and if the prosecutor then fails to come forward with a neutral explanation, the court shall reverse defendant's convictions and order a new trial.

Convictions affirmed and cause remanded for further proceedings.

SULLIVAN, P.J., and MURRAY, J., concur.