SECOND DIVISION

AUGUST 5, 2003

No. 1-00-2509

THE PEOPLE OF THE STATE OF ILLINOIS,

        Plaintiff-Appellee,

         v.

ISRAEL RUIZ,

        Defendant-Appellant.

)

)

)

)

)

)))

)

)

)

Appeal from

Circuit Court of

Cook County

No. 98 CR 31306

Honorable

Edward M. Fiala, Jr., 

Judge Presiding.

JUSTICE GARCIA delivered the opinion of the court:

On May 24, 2000, following a jury trial, the defendant, Israel Ruiz, was convicted of first-degree murder (720 ILCS 5/9-1(a)(2) (West 1998)) and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 1998)).  The defendant was sentenced to concurrent terms of 40 and 15 years in prison respectively.  Pursuant to section 3-6-3(a)(2)(i) of the Unified Code of Corrections (Truth in Sentencing Act (730 ILCS 5/3-6-3(a)(2)(i) (West 1998)), the defendant is required to serve 100% of the first-degree murder sentence. 

On appeal, the defendant raises four issues: (1) whether the trial court erred in instructing the jury on felony murder (720 ILCS 5/9-1(a)(3) (West 1998)) with aggravated discharge of a firearm (720 ILCS 5/24-1.2 (West 1998)) as the predicate felony; (2) whether the trial court erred in entering a separate judgment and sentence for aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 1998)); (3) whether the trial court erred in not compelling the presence of a defense witness; and (4) whether the reenacted Truth in Sentencing Act (730 ILCS 5/3-6-3(a)(2)(i) (West 1998)) is unconstitutional.  For the following reasons, we affirm the judgment of the trial court.

BACKGROUND
BACKGROUND  

Codefendants Israel Ruiz, Michael Mejia, and Rafael Carrasco were indicted and jointly tried for the first-degree murder of Nathaniel Walls and the aggravated discharge of a firearm at Malik Walls.  The defendant and Mejia were tried before separate juries; Carrasco chose a bench trial.  Mejia and Carrasco are not parties to this appeal.  Ruiz's jury found him guilty of first-degree murder (720 ILCS 5/9-1(a)(2) (West 1998)) and aggravated discharge of a firearm (720 ILCS 5/24-1.2(a)(2) (West 1998))
.  As to each charge, the jury returned a general verdict of guilty.
  

The State prosecuted the first-degree murder charge under three theories: (1) knowing or intentional murder in violation of section 9-1(a)(1) of the Criminal Code of 1961 (720 ILCS 5/9-1(a)(1) (West 1998)); (2) murder by creating a strong probability of death or great bodily harm in violation of section 9-1(a)(2) (720 ILCS 5/9-1(a)(2) (West 1998)); and (3) felony murder in violation of section 9-1(a)(3) (720 ILCS 5/9-1(a)(3) (West 1998)).

The evidence presented at trial established that in the evening hours of Saturday, November 7, 1998, Nathaniel Walls was shot in the head while holding his three-year-old son, Malik.  Walls fell face down on top of Malik, injuring him.  Several hours later, Walls died as a result of the gunshot wound to his head.

The shooting took place near the corner of 90th Street and Brandon Avenue in Chicago, the dividing line between two rival street gangs, the Latin Counts and the Gangster Disciples.  Minutes after the shooting, three Chicago police officers stopped a Ford Expedition with its headlights off cruising slowly down an alley less than a block from the shooting.  A young woman leaned out of the vehicle and shouted, "them black GD’s over there were just shooting at us."  The vehicle then went around the police car and sped away.  The police pursued and ultimately stopped the vehicle.  The six occupants, three Hispanic males and three Hispanic females, were removed and searched. 

While in pursuit of the vehicle, the police officers saw the vehicle stop in the middle of an alley less than two blocks from the shooting and saw a handgun thrown from the vehicle’s window.  The weapon was recovered and later confirmed to be the same gun used to kill the victim.   

At the scene of the shooting, eyewitnesses Douglas Garth and Jose Ortiz gave responding police officers descriptions of two persons involved in the shooting that matched two of the male passengers of the vehicle.  Shortly thereafter, at a show-up conducted where the vehicle with the six Hispanic occupants was stopped, Garth identified the defendant's clothing as matching the clothing of one of the individuals present at the time of the shooting
.  At a lineup conducted later that night, eyewitnesses Ortiz, Roy Billups, and Tim Andrews identified the defendant as the shooter. 

ANALYSIS

Felony Murder Jury Instruction

The defendant first argues the
 trial court erred in instructing the jury on felony murder with aggravated discharge of a firearm as the predicate felony because there was no independent felonious intent as to the aggravated discharge of a firearm offense.  A trial court's decision regarding jury instructions is reviewed under an abuse of discretion standard.  
People v. Toney
, 337 Ill. App. 3d 122, 128, 785 N.E.2d 138 (2003), 
citing
 People v. Kidd
, 295 Ill. App. 3d 160, 167, 692 N.E.2d 455 (
1998).

Preliminarily, we note that the defendant did not properly preserve the jury instruction issue for review because he neither objected to the felony murder instruction at trial, nor raised the issue in his posttrial motion.  The State contends this issue is therefore forfeited
(footnote: 1).  See 
People v. Enoch
, 122 Ill. 2d 176, 186, 522 N.E.2d 1124 (1988)
.  However, the defendant argues this issue is reviewable under the plain error doctrine.  

Generally speaking, the plain error doctrine allows a reviewing court to address plain errors affecting substantial rights, even if those errors were not brought to the attention of the trial court.  134 Ill. 2d R. 615(a); 
People v. Armstrong
, 183 Ill. 2d 130, 151, 700 N.E.2d 960 (1998).  Regarding jury instructions in particular, this limited exception to the forfeiture rule can be invoked to correct grave instructional errors or where fundamental fairness mandates that the jury be properly instructed in a factually close case.  
People v. Solis
, 216 Ill. App. 3d 11, 19, 576 N.E.2d 120 (1991).  Although we find the plain error doctrine not to apply here, we nonetheless address this issue on its merits.

"[A] defendant is subject to the felony murder doctrine if the 'decedent's death is the direct and proximate result of the defendant’s felony.'
" 
Toney
, 337 Ill. App. 3d at 128, quoting 
People v. Dekens
, 182 Ill. 2d 247, 252, 695 N.E.2d 474 (1998).  However, 
the forcible felony cannot arise from or be inherent in the murder itself.  
People v. Morgan
, 197 Ill. 2d 404, 447-48, 758 N.E.2d 813 (2001) (
Morgan II
).  In other words, the predicate
 offense for felony murder must have an independent felonious purpose and not be merely incidental to the murder itself.  
People v. Morgan
, 307 Ill. App. 3d 707, 714, 718 N.E.2d 206 (1999) (
Morgan I
). 

Therefore, the question we must answer is whether the forcible felony "resulted in and caused" the death of Nathaniel Walls, or whether it was his murder that gave rise to the forcible felony.  
Morgan II
, 197 Ill. 2d at 446-47.  If the murder gave rise to the forcible felony, then the forcible felony cannot serve as a predicate felony for felony murder.  
Morgan II
, 197 Ill. 2d at 446-47.  To answer this question, a review of the factual context of the murder is necessary.  
Toney
, 337 Ill. App. 3d at 136.  

At trial, the evidence included the defendant's statement that he fired the handgun at three teenagers 
that he immediately recognized as members of the opposing gang, the Gangster Disciples.  In his statement to an assistant State's Attorney, the defendant admitted that he shot "the wrong guy."  The evidence also included testimony that the decedent, Nathaniel Walls, and his young child, Malik Walls, were awaiting the mother of the child, Nicole Mace, near the corner of Brandon Avenue and 90th Street
 on their way to the grocery store.  Nicole Mace testified that seconds before she heard gunshots, her son, Malik, was in the arms of his father, the decedent.

The defendant, in responding to the 
Morgan II
 decision, states that the facts of the instant case are significantly different from the facts in 
Morgan
 and, therefore, "the issue is whether, in this factual context, instructing the jury on felony murder was reversible error."  We agree that the facts here differ substantially from the facts in 
Morgan
.  However, it is precisely because of the "factual context" of this case that we find no error in the felony murder instruction.  

At the beginning of the trial, the jury was informed that the charge of aggravated discharge of a firearm pertained to Malik Walls, the three-year-old child.  As Malik's mother testified, immediately before the deadly shot was fired, Malik was in the arms of his father.  Therefore, it is irrefutable that shots fired in the direction of Malik's father, the decedent, were also fired in the direction of Malik.  Under these facts, the jury was properly instructed on felony murder where the predicate felony of aggravated discharge of a firearm involved a victim other than the murder victim.  See 
People v. Pugh
, 261 Ill. App. 3d 75, 77, 634 N.E.2d 34 (1994).  

In 
Pugh
, the defendants were charged with aggravated discharge of a firearm and felony murder arising from a gun battle with other individuals.  The defendants were charged with firing guns at individuals that returned fire.  The felony murder charge was based on the death of a bystander caused by the "return fire."  
Pugh
, 261 Ill. App. 3d
 at 78.  
The trial court dismissed the charges for reasons not pertinent to the issue before us.  The appellate court
 reversed and remanded the cases for trial.  

Here, the facts are even more compelling that the defendant be held responsible for the death of Nathaniel Walls, as the defendant himself fired the lethal bullet.  As the court in 
Pugh
 noted, "forcible felonies are so inherently dangerous that a resulting homicide, 
even an accidental one
, is strongly probable." (Emphasis added.)  
Pugh
, 261 Ill. App. 3d
 at 77.  Thus, we find no error in instructing the jury on felony murder where the predicate offense involved a victim other than the deceased.  
Accordingly, the trial court did not err in so instructing the jury.

Furthermore, even if instructing the jury on felony murder was error because the instruction did not specifically list Malik as the victim in the predicate felony, the general verdict returned by the jury renders any error in the felony murder instruction harmless.  In this case, the defendant was prosecuted under three theories of first-degree murder: intentional or knowing murder; murder by creating a strong probability of death or great bodily harm; and felony murder.  The jury returned a general verdict finding him guilty of first-degree murder.  The law is clear that where an indictment contains several counts arising out of a single event, and a general verdict is returned, the effect is that the defendant is guilty as charged in each count.  
Toney
, 337 Ill. App. 3d at 134.  

This principle was reaffirmed in 
Morgan II.
  The defendant
 vigorously argues that "there is ample reason to disregard the presumption that the jury found him guilty of either intentional or knowing murder, rather than felony murder."  He quotes a passage from the supreme court in 
Morgan II
 in support of this argument.  "Because the jury instead found [the defendant] guilty of second degree murder with regard to [the grandfather], we see no reason to disregard the presumption that [the defendant] was found guilty of intentional murder with regard to [the grandmother]."  
Morgan II
, 197 Ill. 2d at 449.  In 
Morgan
, the jury was presented with two theories of first-degree murder, "intentional or knowing" murder and felony murder.  Because the charges were identical with respect to the deaths of the grandmother and grandfather and the jury found the 
Morgan
 defendant guilty of first-degree murder as to the grandmother but guilty of second-degree murder as to the grandfather, the supreme court concluded that the jury must have based its finding on "intentional or knowing" murder of the grandmother or else the jury would have found the defendant guilty of first-degree murder as to the grandfather as well under the felony murder theory.  

Although it may well be that a reviewing court can and possibly should "disregard the presumption" raised by a general verdict, the facts here compel no such result.   

Here, the jury was presented with three theories of first-degree murder: (1) intentional or knowing murder; (2) murder by creating a strong probability of death or great bodily harm; and (3) felony murder.  The defendant's argument that because the evidence was clear that the defendant killed the "wrong guy," the jury could not have found the defendant guilty of intentional or knowing murder and therefore must have been found him guilty of felony murder, fatally ignores that the jury was also presented with the theory that the defendant was guilty of first-degree murder by creating a strong probability of death or great bodily harm by shooting at Nathaniel Walls.  Unlike in 
Morgan
, where only two theories of first-degree murder were presented, the general verdict of guilty of first-degree murder in the instant case also meant that the defendant was found guilty of murder by creating a strong probability of death or great bodily harm by shooting at Nathaniel Walls with a gun, as alleged in the indictment and as the jury was charged.  See 
People v. Rodriguez
, 169 Ill. 2d 183, 190 (1996) ("[When] a general verdict of guilty is returned, the effect is that the defendant is guilty 
as charged in each count to which the proof is applicable.
")  (Emphasis added).  

In fact, the trial court entered judgment and sentenced the defendant on count II, "strong probability of death or great bodily harm," merging count I, intentional or knowing murder, and count III, felony murder, into count II.  Here, the proof was more than sufficient to establish that the defendant repeatedly fired a handgun in the direction of Nathaniel Walls while he and his son were on the sidewalk across the street from the defendant, which created the "strong probability of [Nathaniel Walls'] death."  Accordingly, any error in instructing the jury on felony murder was rendered harmless by the return of a general verdict of first-degree murder.  We further note that the evidence was not closely balanced in this case so that there is no valid contention that the felony murder instruction violated fundamental fairness.

Aggravated Discharge of A Firearm Conviction

In addition to the murder charge, the defendant was also indicted for the aggravated discharge of a firearm at Walls' son, Malik.  "A person commits aggravated discharge of a firearm when he [or she] knowingly or intentionally *** [d]ischarges a firearm in the direction of another person or in the direction of a vehicle he knows to be occupied."  720 ILCS 5/24-1.2(a)(2) (West 1998).  In this case, to prove the offense of aggravated discharge of a firearm, the State had to prove that the defendant knowingly fired a weapon and that he fired the weapon in the direction of Malik.  Illinois Pattern Jury Instructions, Criminal, No. 18.12 (4
th 
ed. 2000).  
An essential element of this offense is that the defendant be aware of the presence of individuals in the direction in which he fires.  
People v. James
, 246 Ill. App. 3d 939, 944-45, 617 N.E.2d 115 (1993). 

The defendant’s claim on appeal regarding the jury's verdict finding him guilty of aggravated discharge of a firearm conviction is twofold.  First, he claims that there is "a failure of proof that [the defendant] knowingly fired at Malik."   
Second, building on his first claim that the aggravated discharge count is not sustainable as to Malik, the defendant argues the aggravated discharge count must have pertained to Nathaniel Walls and, therefore, the aggravated discharge of a firearm conviction must be vacated as that offense is, according to the defendant, the "inchoate"
(footnote: 2) offense to the murder charge.  
As a related argument, the defendant claims that to allow both convictions to stand would violate the one-act, one-crime rule under 
People v. King
,
 
66 Ill
.
 2d 551, 363 N.E.2d 838 (1977).  Still further, the defendant claims the trial court misapprehended the nature of the jury's finding of guilty on the aggravated discharge of a firearm offense at sentencing, that this misapprehension may have influenced the sentence imposed on the murder conviction, and therefore, he is entitled to a new sentencing hearing on the murder conviction.  We note that the defendant's related arguments are founded on his initial argument that the evidence was insufficient for the jury to find the defendant guilty of aggravated discharge of a firearm at Malik.  If we reject the defendant's initial argument, then the related arguments must also fail.

 To determine whether there was sufficient evidence to convict the defendant of aggravated discharge of a firearm at Malik, we examine the evidence adduced at trial in the light most favorable to the State.  
People v. Jones
, 295 Ill. App. 3d 444, 452, 692 N.E.2d 762 (1998).  The reviewing court "may not substitute its judgment for that of the trier of fact on questions such as weight of the evidence, credibility of witnesses or resolution of conflicting testimony."  
Jones
, 295 Ill. App. 3d at 452.  The defendant bears the burden of showing the State’s evidence is "so improbable or unsatisfactory that it creates a reasonable doubt as to the defendant’s guilt."  
Jones
, 295 Ill. App. 3d at 452.  Accordingly, the reviewing court will overturn a conviction only when a rational trier of fact could not have found beyond a reasonable doubt that the defendant committed the elements of the criminal offense.  
People v. McCoy
, 295 Ill. App. 3d 988, 995, 692 N.E.2d 1244 (1998).

Underlying the defendant's claim is his assertion that proof was required that the defendant "saw the baby [Malik] as well as Nathaniel Walls" at the time he repeatedly fired the handgun.  As the defendant points out, the instruction as to the aggravated discharge of a firearm offense stated that the defendant shot in the direction of "another person," which is all the pattern instructions 
require, consistent with the definition of the offense itself.  

Contrary to the defendant's argument, there is no requirement that the defendant have knowledge as to the identity of each person in the direction of whom he fires.  The defendant has not presented, nor has our research discovered, any authority requiring that the 
number
 of victims to an aggravated discharge of a firearm offense be known to the defendant, and therefore, be proven beyond a reasonable doubt.  As stated in 
People v. James
, 246 Ill. App. 3d at 945, what is required is "that the offender be aware of the presence of individuals" in the direction in which he discharges a firearm.  This requirement is also consistent with the other means by which aggravated discharge of a firearm may be committed.  A defendant commits aggravated discharge of a firearm when he fires a weapon "into a building he knows to be occupied" or "in the direction of a vehicle he knows to be occupied."  720 ILCS 5/24-1.2 (a)(1), (a)(2) (West 1998).  There is no requirement that the defendant know the exact number of individuals in the building or in the vehicle.  Likewise, the defendant need not know 
how many individuals
 are in the direction he is firing, but merely be aware of the presence of "another person" in whose direction he is firing.

Consequently, in this case, that the evidence may have been slim that the defendant was aware of Malik's presence in the direction in which he fired is of no moment.  The evidence was overwhelming that the defendant was aware of the presence of Nathaniel Walls and that the defendant repeatedly fired his gun in Nathaniel Walls' direction.  The evidence having established that, it is irrefutable that the defendant fired his gun in the direction of Malik Walls as well, as Malik was in the arms of his father, Nathaniel, when the defendant fired.  As stated by the defendant, the dispositive question on this issue is whether the defendant "committed two separate offenses" of murder and aggravated discharge of a firearm.  Our answer, like the jury's, is yes.
   

Accordingly, the defendant's related arguments based on aggravated discharge of a firearm being an "inchoate" offense to the murder offense or, as phrased in his reply brief, the convictions for murder and aggravated discharge of a firearm violating the one-act, one-crime rule, or as to the alleged improper sentencing impact of the defendant's conviction of aggravated discharge of a firearm on his murder sentence, all warrant no further discussion because those arguments have no merit under the facts of this case.

In light of our holding that the defendant was properly convicted of both first-degree murder and aggravated discharge of a firearm, no real issue remains regarding the respective sentences imposed on each offense.  However, we agree with the defendant that the language regarding an "occupied vehicle" on the aggravated discharge of a firearm sentencing order is incorrect.  Accordingly, the sentencing order as to the aggravated discharge of a firearm 
conviction will be corrected to list its commission by firing a handgun in the "direction of another," to comport with the facts adduced at trial.

Failure to Grant Continuance or Compel 

Appearance of 
Defense Witness

The defendant next contends his right to compulsory process was violated when the trial court failed to aid defense counsel in his attempts to subpoena an uncooperative defense witness, Tijuana Lee.  The defendant also argues that the trial court erred when it refused to grant his request for a continuance in mid-trial to locate and subpoena Tijuana Lee.
  The standard of review for trial court rulings on service of subpoenas is an abuse of discretion.  
People v. Johnson
, 162 Ill. App. 3d 12, 16, 515 N.E.2d 825 (1987).
  An abuse of discretion standard is also employed in reviewing a trial court's decision to grant or deny a continuance.  
People v. Coleman
, 203 Ill. App. 3d 83, 100, 560 N.E.2d 991 (1990).
 

The defendant sought to obtain service of a subpoena on Lee, the girlfriend of a State witness.  According to the defense, Lee was an important witness because she gave a statement to the police that conflicted with the statements of the eyewitnesses as to the location of the defendant shortly after the gunshots were fired.  It is apparent from the record that Lee did not wish to testify and successfully avoided being served despite defense counsel's diligent efforts.  

The defendant now asserts that the trial court had means at its disposal to render assistance to defense counsel in securing Lee's appearance at trial
.  In his brief, the defendant argues that the court could have issued a bench warrant for Lee or persuaded the State to obtain Lee's appearance with the aid of one of its witnesses.

However, the defendant does not argue nor does the record reveal that the defendant ever presented such requests to the trial court.  Moreover, the defendant did not list as error any failure by the trial court to provide assistance to the defendant in his efforts to obtain service on Ms. Lee.  Where the defendant has not raised the issue before the trial court, nor included it in a written posttrial motion, the defendant has not properly preserved the issue for review.  
Enoch
, 122 Ill. 2d at 186.  

Even if we were to consider the merits of the defendant's argument that the trial court should have affirmatively assisted the defendant in his efforts to obtain service on Ms. Lee, the defendant has presented no authority for either of the actions the defendant has suggested the trial court could have taken.  Absent authority that the trial court could have issued a bench warrant for a witness never served with a subpoena or forced the State to coerce one of its witnesses to bring to court a friend or relative, we cannot find error in a trial court's failure to do so.

It is clear, however, that the defendant made several requests for a continuance to locate and obtain service on Ms. Lee during the course of the trial.  The trial court, in the exercise of its discretion, ruled that the defendant's requests for time to locate and subpoena the witness came too late in the trial.  At the time the defendant made his last request for a continuance to obtain service on Ms. Lee, the jury had been sitting for more than a week and the State had completed its case in chief.  As the trial court noted, "[I]f you haven't been able to get her yet through obviously an experienced investigator and yourself and she's eluded everyone, she may be eluding [service] for weeks."
  Consequently, it was far from certain that any additional time granted to the defendant would have resulted in successful service on Ms. Lee.  

It is not an abuse of discretion for a trial court to deny a motion for a continuance to obtain service on a witness where "there is no reasonable expectation that the witness will be available in the foreseeable future."
  People v. Watts
, 195 Ill. App. 3d 899, 917, 522 N.E.2d 1048 (1990).  In light of the record before us, we cannot say that the trial court abused its discretion in deciding that there was no "reasonable expectation" that Ms. Lee could be located and 
served.  We also note that the defendant filed a written demand for trial approximately one month before jury selection clearly indicating he was prepared to proceed to trial with the witnesses then available.  See 
People v. Davis
, 147 Ill. App. 3d 800, 803, 498 N.E.2d 633 (1986) (appellate court noted the defendant's demand for trial in rejecting the defendant's contention that the trial court abused its discretion in denying his mid-trial motion for a continuance).

We also note that Ms. Lee's value to the defendant's case is overly stated.  The evidence against the defendant can be summed up as overwhelming: the defendant was seen walking with a handgun near the place of the shooting, he was identified as the shooter by three eyewitnesses, the gun thrown from the vehicle in which he was riding was confirmed to be the murder weapon, and the defendant admitted to shooting the "wrong guy."  Against this evidence, the defendant argues that Ms. Lee was a material witness because her possible testimony would be at odds with the testimony of the three eyewitnesses.  Based on her statement to the responding police officers, Ms. Lee could have placed the defendant immediately after the shooting on the side of the street opposite from where the shooting occurred.  The defendant suggests that by this testimony she could have moved the mountain of incriminating evidence away from the defendant.  We are not persuaded.  "The pertinent inquiry with respect to materiality is not whether the evidence might have helped the defense but whether it is reasonably likely that the evidence would have affected the outcome of the case."  
People v. McLaurin
, 184 Ill. 2d 58, 89, 703 N.E.2d 11 (1998).  The absence of Ms. Lee made no difference in the outcome of this case.

Constitutionality of the "Truth in Sentencing" Act 

The Truth in Sentencing Act (Sentencing Act) provides that all defendants convicted of first-degree murder are automatically denied day-for-day credit for good conduct served in prison.  730 ILCS 5/3-6-3(a)(2)(i) (West 1998).  This means that a defendant must serve 100% of the sentence imposed for first-degree murder.  The defendant claims the Sentencing Act is unconstitutional because it (1) violates the Illinois Constitution's requirement that the sentence imposed accord with the seriousness of the offense, (2) thwarts the objective set out in the Illinois Constitution
 of restoring an offender to useful citizenship, and (3) has the potential of imposing a more serious penalty on a less serious or equivalent offender. 

Although this issue was not raised in the trial court, as a constitutional challenge, it may be raised at any time.  
People v. Bryant
, 128 Ill. 2d 448, 539 N.E.2d 1221 (1989).
  It is well established that all legislation is presumed to be constitutional and that the party challenging the legislation bears the heavy burden of establishing a clear constitutional violation.  
People v. Dunigan
, 165 Ill. 2d 235, 244, 650 N.E.2d 1026 (1995).  
De novo
 review is the appropriate standard when examining the constitutionality of a statute.  
Wilson v. Department of Revenue
, 169 Ill. 2d 306, 310, 662 N.E.2d 415 (1996).
  
  

The challenge to the constitutionality of the Sentencing Act was addressed by this court in 
People v. Gorgis
, 337 Ill. App. 3d 960, 974, 787 N.E.2d 329, 340 (2003).
  In rejecting the defendant’s claim, we found the Sentencing Act to be a valid exercise of police power, stating:

"First degree murder is the most serious offense that can be committed, and it is therefore reasonable that the penalty for it also be severe.  We can discern no unequal treatment here and no violation of the equal protection clause of either the federal or state constitution.  Nor is there a due process violation; this law is reasonably designed to remedy the evil of murderers not serving their complete sentences, and the imposition of the truth-in-sentencing guidelines for such conduct is constitutionally permissible." 
 Gorgis
, 337 Ill. App. 3d at 975, 787 N.E.2d at 341.  

We see no reason to alter our view of the Sentencing Act.  The principles of 
stare decisis
 mandate the same holding in this case.  See 
People v. Antoine
, 286 Ill. App. 3d 920, 924-25, 676 N.E.2d 1374 (1997). 

CONCLUSION

For the reasons stated, we affirm the trial court’s judgment and order the mittimus be corrected.

Affirmed; mittimus corrected.

McBRIDE, P.J., and BURKE, J., concur.
 

FOOTNOTES
1:
In accordance with the Illinois Supreme Court’s opinion in 
People v. Williams
, 204 Ill. 2d 191, 208, 788 N.E.2d 1126 (2003), the term "forfeiture", instead of "waiver", will be used to indicate claims raised on appeal that were not properly preserved.

2: 
The State correctly notes that the Illinois Criminal Code limits "inchoate" offenses to solicitation, conspiracy and attempt (720 ILCS 5/8 (West 1996), none of which apply here.