**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2026 IL App (3d) 250018-U

Order filed May 6, 2026

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2026

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-25-0018 Circuit No. 20-CF-1806 |
| | ) | |
| JORGE ROSAS JR., | ) ) | Honorable Daniel D. Rippy, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE ANDERSON delivered the judgment of the court.
Justices Holdridge and Brennan concurred in the judgment.

_____

**ORDER**

¶ 1　　　*Held*:　(1) The evidence was sufficient to find defendant guilty of aggravated discharge of a firearm. (2) Defendant's convictions complied with the one-act, one-crime rule.

¶ 2　　　Defendant, Jorge Rosas Jr., appeals his convictions for aggravated discharge of a firearm and first degree murder, arguing that (1) the evidence was insufficient to establish his guilt for aggravated discharge of a firearm and (2) his convictions violated the one-act, one-crime rule. We affirm.

I. BACKGROUND

¶ 4    Relevant to this appeal, the State charged defendant with first degree murder (720 ILCS 5/9-1(a)(1) (West 2020)) and aggravated discharge of a firearm (*id.* § 24-1.2(a)(2)). Specifically, the State alleged that defendant committed first degree murder in that defendant, "with the intent to kill or do great bodily harm to Ivan Perez-Garcia, shot *** Perez-Garcia with a firearm, thereby causing [his] death," and aggravated discharge of a firearm in that defendant "knowingly discharged a firearm in the direction of another person, Araceli Joachin." Later, the State filed a motion providing notice that it would seek an additional term of 25 years to natural life imprisonment for first degree murder because defendant discharged a firearm during the commission of the offense, which ultimately caused the death of Perez-Garcia (730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2020)). The matter proceeded to a jury trial.

¶ 5    At trial, Joachin testified that on October 26, 2020, she was with her boyfriend, Perez-Garcia at her house. Eventually, they left the house, and Perez-Garcia drove Joachin in his compact vehicle. After driving around for a bit, Perez-Garcia drove Joachin back to her house. When they arrived, Perez-Garcia pulled past the driveway to allow defendant's vehicle to pass on the street.[1] Perez-Garcia then reversed and pulled into the driveway. Joachin observed defendant's vehicle park further down the street. While parked, Joachin was gathering her belongings and preparing to exit the vehicle. They were still sitting in the vehicle when Joachin observed that defendant had approached the driver's side and said "a couple of words" before discharging a firearm. Joachin stated that the windows were up, defendant pointed a firearm at Perez-Garcia, who put his arms above his head, and defendant discharged two gunshots in quick succession into the vehicle.

---

[1]Joachin did not identify defendant, but defendant was later identified as the perpetrator through police investigation. As identity is not at issue, we will refer to defendant throughout the testimony at trial for readability.

Joachin believed that she "could have been shot." Joachin stated she was in shock and Perez-Garcia was nonresponsive. On cross-examination, Joachin testified that prior to the vehicles passing each other, defendant's vehicle came "face to face" with Perez-Garcia's vehicle, and she observed two individuals inside. Joachin did not recognize defendant and had never seen him before.

¶ 6        Itzel Diaz testified that Perez-Garcia was her brother. She did not know anyone who had any arguments with Perez-Garcia or would have wanted to harm him. Diaz did not know why this happened and did not know defendant. "As far as [she] knew," Perez-Garcia did not know defendant.

¶ 7        Surveillance video showed Perez-Garcia driving on the street in front of Joachin's house. The video showed the porch lights and streetlights illuminating the area. Perez-Garcia reversed his vehicle, and the front of defendant's vehicle was facing the front of Perez-Garcia's vehicle, waiting to continue down the road. Perez-Garcia drove into Joachin's driveway and parked. Defendant's vehicle drove past Perez-Garcia and Joachin, who remained seated in the vehicle. Joachin sat in the front passenger seat next to Perez-Garcia. Seconds later, defendant's vehicle stopped in the road, and defendant approached Perez-Garcia's vehicle on foot. Defendant walked up to the driver's side window, pointed his arm straight at the window, nearly touching it. Perez-Garcia put his arms up and a moment later, the window exploded. Joachin remained seated in the vehicle for a few seconds before exiting.

¶ 8        The parties stipulated that the coroner performed the pathology examination on Perez-Garcia, where she identified two gunshot wounds and recovered two bullets. One bullet entered on his left back. The bullet traveled back to front, left to right, and downward. The bullet "would have incapacitated" Perez-Garcia. The second bullet entered Perez-Garcia's left side, traveling from left to right in a downward direction. The injury resulting from the second bullet was fatal.

¶ 9 The jury found defendant guilty of first degree murder and aggravated discharge of a firearm. The court sentenced defendant to a term of life imprisonment and a consecutive term of 10 years' imprisonment, respectively. Defendant filed a motion to reconsider sentence, which was denied.

¶ 10                                    II. ANALYSIS

¶ 11 On appeal, defendant argues that (1) the evidence was insufficient to establish his guilt for aggravated discharge of a firearm and (2) his convictions violated the one-act, one-crime rule. We address each argument in turn.

¶ 12                          A. Sufficiency of the Evidence

¶ 13 When a defendant makes a challenge to the sufficiency of the evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original and internal quotation marks omitted.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985). "This standard of review does not allow the reviewing court to substitute its judgment for that of the fact finder on questions involving the weight of the evidence or the credibility of the witnesses." *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009). Thus, we afford great deference to the trier of fact "to determine the credibility of witnesses, to weigh evidence and draw reasonable inferences therefrom, and to resolve any conflicts in the evidence." *People v. Siguenza-Brito*, 235 Ill. 2d 213, 228 (2009). We will not retry a defendant and must allow all reasonable inferences from the evidence in favor of the State. *People v. Lloyd*, 2013 IL 113510, ¶ 42. A judgment will not be reversed "unless the evidence is so unreasonable, improbable, or unsatisfactory as to create a reasonable doubt of the defendant's guilt." *People v. Newton*, 2018 IL 122958, ¶ 24.

4

¶ 14      Defendant was charged with aggravated discharge of a firearm. A person commits aggravated discharge of a firearm when he knowingly or intentionally "[d]ischarges a firearm in the direction of another person ***." 720 ILCS 5/24-1.2(a)(2) (West 2020). Thus, to prove aggravated discharge of a firearm, the State must prove that defendant (1) knowingly discharged a firearm and (2) fired in the direction of another person. See *id.*

¶ 15      Here, the surveillance video showed defendant approach the driver's side of Perez-Garcia's compact vehicle. Joachin was seated in the front passenger seat and in close proximity to Perez-Garcia. Defendant put his arm up and aimed the firearm at the driver's side window and into the front cabin of the vehicle and fired two shots. At this point, defendant had (1) discharged a firearm and (2) did so in the direction of Joachin. Defendant was close enough to the compact vehicle to know that it was occupied by more than one person. Moreover, Joachin's testimony that she observed two individuals in defendant's vehicle lends credence to the notion that the vehicles were close enough that defendant also observed two individuals before approaching Perez-Garcia's compact vehicle on foot. Notably, defendant discharged his firearm twice into the small front cabin of the vehicle, where Joachin believed that she would be shot by defendant, tending to show that defendant discharged the firearm in her direction. Additionally, neither Joachin nor Perez-Garcia knew the defendant or had any reason to be targeted by him. Given the compact nature of Perez-Garcia's vehicle, Joachin's testimony, the seemingly random nature of defendant's act, and defendant's discharge of two bullets, a jury could reasonably infer that defendant discharged his firearm in the direction of two individuals and intended at least one bullet for Joachin. See *People v. Lemke*, 349 Ill. App. 3d 391, 398 (2004) ("On appeal, we will not substitute our judgment for that of a trier of fact in cases where the facts could lead to either of two inferences, unless the inference accepted by the fact finder is inherently impossible or unreasonable."). We note that

defendant does not point to any case law finding the evidence insufficient in similar circumstances. Therefore, in the light most favorable to the State, we find the evidence was sufficient to convict defendant of aggravated discharge of a firearm.

¶ 16    In coming to this conclusion, we reject defendant's contention that the downward trajectory of the bullets located in Perez-Garcia's body disproved that defendant discharged his firearm in Joachin's direction. At most, the trajectory of the bullets aligned with the surveillance video, which showed defendant standing when he discharged the firearm at two people who were seated in the compact vehicle. The downward trajectory did not negate the direction in which defendant pointed the firearm into a vehicle occupied by two individuals, but the angle at which he was standing from both victims. See *People v. Teague*, 2013 IL App (1st) 110349, ¶ 27 ("Poor marksmanship *** is a question of fact for the jury to determine whether defendant lacked the intent to kill or whether defendant was simply unskilled with his weapon and missed his targets."). Therefore, we do not find the jury's interpretation of the facts "inherently impossible or unreasonable." *Lemke*, 349 Ill. App. 3d at 398.

¶ 17                                B. One-Act, One-Crime Rule

¶ 18    In the alternative, defendant argues that his conviction for aggravated discharge of a firearm violates the one-act, one-crime rule because it was based on the same physical act as his conviction for first degree murder. Specifically, defendant contends that the State intended to charge only one act because it did not apportion out the two gunshots across the charges or separate them in their argument or theory of the case. See *People v. Artis*, 232 Ill. 2d 156, 165 (2009) (stating that multiple convictions based on a single act are improper). In his reply, defendant concedes that he failed to raise this argument in a posttrial motion, and he has therefore forfeited this issue on appeal. See *People v. Pryor*, 372 Ill. App. 3d 422, 434 (2007) ("It is well settled that

6

a claim that multiple convictions were improper can be [forfeited] by failing to raise the issue before the trial court."). However, defendant asks that we review the claim under the second prong of the plain error doctrine. The plain error doctrine first requires that we determine whether an error occurred in the first instance. See *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Whether the one-act, one-crime rule was violated is a question of law, which we review *de novo*. If we find that a one-act, one-crime violation occurred, then the conviction may be reversible under the second prong of the plain error doctrine. *People v. Nunez*, 236 Ill. 2d 488, 493 (2010).

¶ 19     The one-act, one-crime rule stands for the proposition that a "defendant may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *People v. Coats*, 2018 IL 121926, ¶ 11. When determining whether the one-act, one-crime rule bars multiple convictions, we implement a two-step analysis. *Id.* ¶ 12. "First, the court ascertains whether the defendant's conduct consisted of a single act or separate acts." *Id.* If it is determined that defendant committed multiple acts, the court moves to the second step of the analysis and determines whether any of the offenses are lesser included offenses. *Id.*

¶ 20     For purposes of the rule, an "act" is "any overt or outward manifestation which will support a different offense." (Internal quotation marks omitted.) *Id.* ¶ 15. The one-act, one-crime rule generally applies to multiple convictions for acts against a single victim. See *People v. Grover*, 93 Ill. App. 3d 877, 880-81 (1981). Thus, multiple convictions are permissible when there are multiple victims. See *id.* For multiple convictions to be sustained for separate but closely related acts, the indictment must indicate that the State intends to treat the conduct of defendant as multiple acts. *People v. Crespo*, 203 Ill. 2d 335, 345 (2001). "In Illinois it is well settled that separate victims require separate convictions and sentences." *People v. Shum*, 117 Ill. 2d 317, 363 (1987).

7

¶ 21 Initially, we note that the State charged defendant with aggravated discharge of a firearm to Joachin, distinctly separate from the first degree murder to Perez-Garcia, showing that the State intended to charge the offenses as separate acts against two different victims. See *Crespo*, 203 Ill. 2d at 345. Supporting this choice, the facts show that defendant discharged his firearm twice, resulting in two separate "overt or outward manifestation[s] which will support a different offense." (Internal quotation marks omitted.) *Coats*, 2018 IL 121926, ¶ 15. Although both convictions inherently require a common act involving the discharge of the firearm, the offenses are not based precisely on the same physical act. See *People v. Lobdell*, 121 Ill. App. 3d 248, 252 (1983) ("A person can be guilty of two offenses when a common act is part of both offenses or part of one offense and the only act of the other offense."); 720 ILCS 5/9-1(a)(1), 24-1.2(a)(2) (West 2020); 730 ILCS 5/5-8-1(a)(1)(d)(iii) (West 2020). Here, the State intended to treat defendant's conduct as multiple acts for which multiple convictions may be sustained. See *People v. Amaya*, 321 Ill. App. 3d 923, 930-31 (2001).

¶ 22 Even assuming that defendant discharging his firearm twice constitutes a single act, the evidence shows that he committed the act against two different victims. See *People v. Leach*, 2011 IL App (1st) 090339, ¶¶ 33-34. While Perez-Garcia may have been defendant's *primary* target, that fact does not mean that he was the *only* person defendant knew to be in his line of fire. Where the facts indicate that defendant approached the vehicle, pointed his firearm point-blank at the front passenger cabin of the vehicle where two individuals were sitting, the evidence supports defendant's conviction for aggravated discharge of a firearm, even where Joachin may have merely been a collateral or an incidental target. See *People v. Ruiz*, 342 Ill. App. 3d 750, 759 (2003) (where the defendant repeatedly fired a gun in the direction of a father holding his three-year-old son, the defendant was properly convicted of aggravated discharge of a firearm as to the child, even though

8

the evidence that defendant was aware of the child's presence was minimal—it was enough that defendant was aware that he was firing in the direction of any person). Because the evidence shows that defendant committed different offenses against different victims, the one-act, one-crime rule does not apply to defendant's convictions for aggravated discharge of a firearm and first degree murder. See *Grover*, 93 Ill. App. 3d at 880-81. Thus, the court did not violate the one-act, one-crime rule when it convicted defendant of first degree murder and aggravated discharge of a firearm. Having found no error, there can be no plain error.

¶ 23                                    III. CONCLUSION

¶ 24        The judgment of the circuit court of Will County is affirmed.

¶ 25        Affirmed.