2021 IL App (1st) 190519-U

FIFTH DIVISION
JUNE 30, 2021

No. 1-19-0519

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 11 CR 8264 |
| | ) | |
| CORDELROW BROWN, | ) | Honorable |
| | ) | Geary W. Kull, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

JUSTICE CUNNINGHAM delivered the judgment of the court.
Presiding Justice Delort and Justice Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's dismissal of the defendant's postconviction petition is affirmed.

¶ 2    Following his conviction for felony murder, the defendant-appellant, Cordelrow Brown, filed a postconviction petition in the circuit court of Cook County. The circuit court dismissed the postconviction petition, and the defendant now appeals that dismissal. For the following reasons, we affirm the judgment of the circuit court of Cook County.

¶ 3                          BACKGROUND

¶ 4    The defendant was convicted of felony murder for the death of Mycal Hunter. He subsequently filed a postconviction petition arguing that he received ineffective assistance of

counsel, which is the subject of this appeal. In the interest of clarity and brevity, we will present only the facts pertinent to this order. For a full recitation of facts leading up to this appeal, see *People v. Brown*, 2015 IL App (1st) 134049.

¶ 5    In the early morning hours of November 24, 2007, the defendant approached three men, Terrell Spencer, Michael Dixon, and Jarrett Swift, in a strip mall parking lot. The defendant had been involved in a nightclub altercation with the three men hours before. Mr. Spencer was standing in the parking lot, outside of an SUV and opening the door to it, as Mr. Dixon and Mr. Swift sat inside the SUV. At that moment, the defendant suddenly appeared about five feet away from the SUV, told Mr. Spencer words to the effect of "I caught you slipping," and began firing a gun at him.

¶ 6    Mr. Spencer jumped into the SUV and lay down on the vehicle floor but was shot in his lower back. The defendant continued to fire rounds in rapid succession into the SUV. As he did so, Mr. Dixon retrieved a 9-millimeter gun from beneath the passenger seat. He fired approximately five shots toward the defendant but did not hit him. Shortly thereafter, the SUV sped away from the scene to a hospital, where Mr. Spencer was treated for his injury. Mr. Spencer recalled hearing 30 to 35 shots during the incident; police recovered approximately 29 shell casings from the parking lot.

¶ 7    At the same time, elsewhere in the strip mall parking lot, Mr. Hunter was sitting in the backseat of a car owned by his friend, Eric Stockley. The two men had come to the parking lot to attempt to jump-start the car of another friend. Mr. Hunter did not know the defendant or any of the SUV's occupants. During the shooting, a bullet entered Mr. Stockley's vehicle and struck Mr. Hunter in the neck, rendering him a quadriplegic and dependent upon a ventilator for the remainder

of his life. For medical reasons, the bullet could not be removed from Mr. Hunter's neck during his lifetime.

¶ 8     The defendant was subsequently charged with multiple offenses: with respect to Mr. Spencer and Mr. Hunter, the defendant was charged with attempted murder, aggravated battery with a firearm, aggravated battery, and aggravated discharge of a firearm. The defendant was additionally charged with aggravated battery and aggravated discharge of a firearm with respect to both Mr. Swift and Mr. Dixon.

¶ 9     A bench trial commenced in December 2008. Officer Terrence Powell, an evidence technician, testified that he located 28 or 29 shell casings from a semiautomatic weapon, as well as several bullets. Officer Powell testified that based on the pattern of the shell casings, the shooter had fired while moving from east to west across the parking lot. Officer Powell also testified that the car where Mr. Hunter was struck was on the east side of the parking lot and that no shell casings had been found in that area. No forensic evidence was presented at the first trial to identify which weapon had fired the bullet that struck Mr. Hunter in the neck.

¶ 10     At the close of the State's case, the defendant moved for a directed verdict. The State opposed the motion, arguing that the location of the vehicles and shell casings established that the defendant had fired eastward in the direction of the SUV and Mr. Stockley's car, whereas Mr. Dixon fired in the opposite direction, toward the defendant. Thus, the State argued that the defendant must have fired the bullet that struck Mr. Hunter as he sat in Mr. Stockley's car. The trial court granted the directed verdict in part, explaining that it found "sufficient evidence * * * as to the shooting of Mr. Terrell Spencer and the [SUV] that he was in. However[,] I do not find there is sufficient evidence for the shooting of Mr. Mycal Hunter." The court ruled that "as to the

counts with Mr. Mycal Hunter * * * the motion for directed finding is granted. There will be a finding of not guilty as to those." Therefore, with respect to Mr. Hunter, the defendant was acquitted of attempted murder, aggravated battery with a firearm, aggravated battery, and aggravated discharge of a firearm. The trial court otherwise denied the motion for directed verdict with respect to the remaining charges against the defendant related to Mr. Spencer, Mr. Dixon, and Mr. Swift.

¶ 11    The defendant presented no evidence. On January 28, 2009, after closing arguments, the trial court found the defendant guilty of several felonies. Specifically, with respect to shooting Mr. Spencer, the defendant was convicted of aggravated battery with a firearm, aggravated battery, and aggravated discharge of a firearm. The defendant was also convicted of two counts of aggravated discharge of a firearm for shooting in the direction of Mr. Dixon and Mr. Swift. On March 18, 2009, the defendant was sentenced to six years of incarceration for the offense of aggravated battery with a firearm and a concurrent sentence of four years for aggravated discharge of a firearm.

¶ 12    In January 2010, Mr. Hunter, who had been dependent upon a ventilator since the November 2007 shooting, died as a result of his injuries. The State prosecuted the defendant for first degree murder in Mr. Hunter's death. The State did not charge him with intentional murder but rather with two counts of knowing murder. The State also charged the defendant with five counts of felony murder, predicated on the five felony convictions committed against Mr. Spencer, Mr. Swift, and Mr. Dixon.

¶ 13    In May 2013, a bench trial on the murder charges proceeded. The State elicited testimony from Dr. Jeff Harkey, an expert in forensic pathology, who had performed an autopsy on Mr.

Hunter. Dr. Harkey testified that Mr. Hunter's death in 2010 resulted from blood loss caused by a complication of his ventilator dependency, which in turn stemmed from his gunshot wound in 2007. Thus, Mr. Hunter's death was considered a homicide. Dr. Harkey also testified that he had removed the bullet from Mr. Hunter's neck following his death and provided it to investigators.

¶ 14    The State called Tonia Brubaker, a firearms examiner, who had analyzed evidence recovered from the parking lot, the SUV, and the bullet recovered from Mr. Hunter's body. Ms. Brubaker testified that the numerous shell casings recovered from the parking lot originated from the same weapon but did not originate from the 9–millimeter gun recovered from the SUV. She also testified that the bullets recovered, including the bullet from Mr. Hunter's body, were from the same weapon but were not fired from the 9–millimeter weapon.

¶ 15    On May 7, 2013, at the end of the trial, the trial court found the defendant guilty on all murder counts. In so ruling, the trial court noted that the defendant's "discharge of a firearm proximately caused the death of Mr. Mycal Hunter."

¶ 16    On direct appeal, the defendant argued before this court that his murder conviction was precluded by double jeopardy and collateral estoppel. This court concluded that neither double jeopardy nor collateral estoppel barred the defendant's felony murder prosecution. *Id.* ¶¶ 38, 43. However, this court vacated the two counts of knowing murder, "as well as [the defendant's] convictions based upon the three counts of felony murder predicated upon his prior convictions for aggravated discharge of a firearm and the count of felony murder predicated upon the defendant's prior conviction for aggravated battery" based on the one-act, one-crime doctrine. *Id.* ¶ 62. We therefore affirmed "the defendant's conviction for the single count of felony murder predicated upon the defendant's prior conviction for aggravated battery with a firearm" against

Mr. Spencer and remanded the case to the trial court to resentence the defendant on that felony murder count. *Id.* Upon remand, the trial court resentenced the defendant to 85 years' imprisonment.

¶ 17    On September 29, 2017, the defendant filed his postconviction petition, through new retained counsel. That petition is the subject of this appeal. The petition alleged that the defendant was "denied due process of law * * * when he was convicted of a crime that does not exist in Illinois law." Specifically, the defendant claimed that "he was convicted of felony murder predicated on felonies where the act of firing the shot that caused the death arose from and was inherent in the murder and where the act had no independent felonious purpose from the conduct that resulted in the death" of Mr. Hunter. The petition also contended that the defendant was denied effective assistance of counsel by both his trial and appellate counsels for, *inter alia*, their failure to challenge the felony murder charges on due process grounds.

¶ 18    On August 24, 2018, the State filed a motion to dismiss the postconviction petition. The motion argued that the defendant's arguments were precluded by the doctrine of collateral estoppel because his felony murder conviction had already been considered and affirmed by this court on direct appeal. The motion averred that, notwithstanding collateral estoppel, the defendant's arguments were meritless because the predicate felony of aggravated battery with a firearm against Mr. Spencer was not inherent in the murder of Mr. Hunter, and therefore the defendant did not receive ineffective assistance of counsel on those grounds.

¶ 19    During arguments on the State's motion to dismiss, the State claimed that the cases the defendant relied upon in his postconviction petition involved an affirmative defense, which made them distinguishable from his case. Additionally, the State pointed out that one of the cases relied

upon by the defendant, *People v. O'Neal*, 2016 IL App (1st) 132284, was decided in 2016, "long after the representation of any of the lawyers in this case," and so the court could not "hold them to be ineffective for not anticipating" that decision.

¶ 20    The defendant, relying upon *People v. Morgan*, 197 Ill. 2d 404 (2001), argued that a felony murder conviction predicated upon an act of shooting cannot stand if the murder was "inherently a part of the shooting itself." The trial court responded by stating, "That's not the felony he was committing. He was committing a felony against two completely different individuals. * * * [T]he one he stands convicted of is not an act that's a felony act that was perpetrated towards Mr. Hunter." The following exchange then ensued:

> "[DEFENSE COUNSEL]: "So essentially what we are talking about is if you shoot at somebody and it results in a death, that you can't use the aggravated battery or the aggravated discharge or the basic gist of firing the weapon as the predicate felony for a felony murder.
>
> THE COURT: I understand that. This is not just the firing of the weapon though, it is the aggravated battery of another person. I understand that the simple firing of the weapon isn't going to be the predicate for felony murder, but this is the aggravated battery of --
>
> [DEFENSE COUNSEL]: [Mr.] Spencer.
>
> THE COURT: -- [Mr.] Spencer. And that's the felony that was going on. And in the course of events, shooting up and back, and there was some question as to what bullet hit who, but as far as Mr. Hunter was concerned, I think it is clear that it was -- at least factually you can find clearly that it was the bullets fired from

[the defendant's] weapon that hit Mr. Hunter. So I mean it is -- it is in the same course of an actual felony. I am committing a felony. If I am committing a felony against you and because I shoot over your shoulder, even though I really wanted to kill you, and I miss you and I hit someone independently, the fact that I am actually trying to kill you should not -- that felony act should not preclude me from being hit with the felony murder of the poor person I hit, should it?

[DEFENSE COUNSEL]: Yes, it should. Exactly, it should.

THE COURT: So what is the recourse for that bystander? This little 2-year old kid that just got killed with some idiot shooting into a crowd, what's his recourse? Nobody is responsible for this because he wasn't trying to commit a felony against you?

[DEFENSE COUNSEL]: Well, the recourse is [] that you have a doctrine of transferred intent that allows you to seek a regular murder conviction against the person because he intended to shoot at one person and missed, and then hit the other person."

The defendant then conceded that *O'Neal* was decided after his case and averred that "we didn't have the situation involving an innocent bystander" at the time of his case, but nonetheless argued "that's a logical extension if you look at the actual cases that have dealt with this in the Illinois Supreme Court."

¶ 21 The State responded by stating that *Morgan* is distinguishable because "the predicate felony was directed to the same victim who was the victim of the murder." Citing *People v. Toney*, 337 Ill. App. 3d 122 (2003), and other "case law that existed at the time" of the defendant's trial;

the State asserted that the charges related to the other victims in this case could serve as a predicate for the felony murder of Mr. Hunter. The State concluded: "the case law that existed at the time that counsel could have argued in the Appellate Court, that counsel could have argued to the trial court, the cases counsel is relying on post date that so counsel can't be found ineffective for not anticipating where the Appellate Court is going to go." After arguments, the trial court continued the matter so it could further review the related case law.

¶ 22   On December 5, 2018, the trial court granted the State's motion and dismissed the defendant's postconviction petition. In so ruling, the trial court stated:

> "[The defendant] has advanced a theory that would indicate that he should not have been convicted on a felony murder theory when the predicate felony is an aggravated battery that, of course, -- an aggravated battery with a firearm that by definition necessitates the shooting of a weapon.
>
> I have looked at all of the cases. The *O'Neal* case was determined in 2016 long after this case had been appealed and tried and tried again. And my feeling on this is that counsel's position is -- first of all, the cases cited are not on point -- directly on point.
>
> There is language in the *O'Neal* case that perhaps can be construed in a fashion that counsel would have had a court agree with. At this point in time I cannot agree with that.
>
> But, even more importantly, I cannot say that at the time that [appellate counsel] wrote the appeal or at the time that the attorneys tried the matter in the first place that this position was a valid position.
>
> I find it to be in my opinion an imaginative (possibly valid at this point) position that a normal, competent trial attorney and appellate attorney would not have advanced as

a matter of course. It is not simplistically a matter that is common knowledge[] and was not common knowledge of any of the attorney[s] -- or should not have been common knowledge of attorneys of that time.

And so without more I certainly cannot say that any of those attorneys were ineffective. [The defendant] was entitled to both trial and appellate lawyers who were competent. I believe the record shows that they were, and the results show that they were not perfect attorneys, which [current defense counsel] may be.

But at this point in time I'm going to deny your post-conviction proceeding based on the fact that I don't find that the attorneys, both the trial and appellate attorneys, were ineffective because they failed to raise the issue that you raised here."

The trial court subsequently denied the defendant's motion to reconsider. This appeal followed.

¶ 23                                    ANALYSIS

¶ 24    We note that we have jurisdiction to review the trial court's order dismissing the defendant's postconviction petition, as the defendant filed a timely notice of appeal. Ill. S. Ct. R. 603 (eff. Feb. 6, 2013); R. 606 (eff. Mar. 12, 2021).

¶ 25    The sole issue before us now is whether the trial court erred in dismissing the defendant's postconviction petition. The defendant argues that the trial court erred in dismissing his petition because he received ineffective assistance of counsel from both trial and appellate counsels in that they failed to challenge his felony murder conviction being predicated on the aggravated battery with a firearm committed against Mr. Spencer. Relying heavily upon *Morgan* and *O'Neal*, the defendant maintains that the "act of firing the gun was an act inherent in the fatal shooting itself and had no felonious purpose independent of the fatal shooting," and so his felony murder

conviction cannot be predicated on his aggravated battery with a firearm conviction. The defendant therefore claims that his counsels' failure to challenge his felony murder conviction on that basis rendered them ineffective.

¶ 26    "The Postconviction Hearing Act provides a procedural mechanism through which a criminal defendant can assert that his federal or state constitutional rights were substantially violated in his original trial or sentencing hearing." *People v. Davis*, 2014 IL 115595, ¶ 13 (citing to (725 ILCS 5/122-1 *et seq.* (West 2016)). At the second stage of a postconviction proceeding, the State may file a motion to dismiss the defendant's postconviction petition. *People v. Simpson*, 204 Ill. 2d 536, 546 (2001); 725 ILCS 5/122–5 (West 2016). To survive a motion to dismiss, the defendant must make a substantial showing that his constitutional rights have been violated, supported by the trial record or accompanying affidavits where appropriate. *Simpson*, 204 Ill. 2d at 546-47. We review the dismissal of a petition for postconviction relief *de novo*. *People v. Fields*, 331 Ill. App. 3d 323, 327 (2002).

¶ 27    Claims of ineffective assistance of counsel are reviewed through a two-part test that was announced by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), and was adopted by our supreme court. *People v. Burrows*, 148 Ill. 2d 196, 232 (1992). To prevail on a claim of ineffective assistance of counsel, a defendant must show that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's substandard representation so prejudiced the defense as to deny the defendant a fair trial. *Id.* To demonstrate performance deficiency, a defendant must establish that counsel's performance fell below an objective standard of reasonableness. *People v. Collins*, 2021 IL App (1st) 170597, ¶ 70. In determining whether counsel's performance was unreasonable,

there is a "strong presumption that the challenged action or inaction of counsel was the product of sound trial strategy and not of incompetence." *People v. Coleman*, 183 Ill. 2d 366, 397 (1998). Failure to satisfy either prong of the *Strickland* test precludes a finding of ineffective assistance of counsel. *People v. Albanese*, 104 Ill. 2d 504, 527 (1984).

¶ 28    The crux of the defendant's argument in this case, is that his trial and appellate counsels should have argued that his felony murder conviction is "faulty" because there was no separate felonious purpose between the defendant firing his gun at Mr. Spencer and Mr. Hunter being inadvertently hit by a bullet during the gun fire. The defendant in this case relies upon *Morgan*, in which the defendant was charged with the murders of his grandparents after he shot them. 197 Ill. 2d at 410. He was ultimately convicted of second degree murder of his grandfather and the first degree murder of his grandmother. *Id.* Prior to the trial, the defendant sought to dismiss the counts of felony murder predicated on the offenses of aggravated battery and aggravated discharge of a firearm, arguing that those predicate felonies "were not independent of the murders themselves." *Id.* at 444. The trial court denied the motion to dismiss the counts, but this court held that felony murder was limited to cases in which the predicate felony consisted of conduct other than that inherent in the killing itself. *Id.* Our supreme court agreed, stating that, "acts constituting forcible felonies arise from and are inherent in the act of murder itself, those acts cannot serve as predicate felonies for a charge of felony murder." *Id* at 447. The supreme court reasoned that, otherwise, all fatal shootings could be charged as felony murder based upon aggravated battery and/or aggravated discharge of a firearm, resulting in the elimination of the need for the State to prove an intentional or knowing killing in most murder cases. *Id.*

¶ 29    The instant case is distinguishable from *Morgan*, however. The defendant shooting Mr.

Spencer as his target was not an inherent act of the murder of Mr. Hunter, *an entirely separate person who the defendant did not intend to shoot*. This is unlike *Morgan* where both the predicate felony and the felony murder regarded the *same* victim. Further, regardless of whether the defendant's bullet or Mr. Dixon's bullet struck Mr. Hunter, it was the defendant's initial act of shooting at Mr. Spencer and his two friends that set in motion the events that eventually resulted in the death of Mr. Hunter. Mr. Hunter's ultimate death was a felony completely independent of the shooting of Mr. Spencer. See *Toney*, 337 Ill. App. 3d at 134 ("Unlike *Morgan*, where the acts constituting forcible felonies arose from and were inherent in the act of murder itself, here the State's evidence demonstrated that the acts constituting the forcible felony of aggravated discharge of a firearm were not inherent in the act of murder itself but, rather, involved conduct with a felonious purpose other than the killing of [an innocent bystander]" during a gang gun fight). Looking at the facts of this case, in which the defendant opened fire on Mr. Spencer and his friends in the SUV; and Mr. Dixon returning fire; and Mr. Hunter (an innocent and unrelated bystander) being struck by a bullet from the gun fight; it cannot be said that the murder of Mr. Hunter was an *inherent part* of the aggravated battery with a firearm against Mr. Spencer.

¶ 30    Indeed, these types of circumstances are precisely why the felony murder doctrine exists. "The purpose of the felony murder statute is to deter individuals from committing forcible felonies by holding them responsible for murder if death results from their criminal acts that involve the use or threat of force or violence against any individual." *Id.* at 130-31. *Morgan* and its principles therefore do not provide relief to the defendant. Under these facts and circumstances, it is not unreasonable for the defendant's felony murder conviction for Mr. Hunter's death to be predicated upon the aggravated battery with a firearm conviction for shooting Mr. Spencer.

¶ 31    Thus, the defendant's trial and appellate counsels were not deficient for failing to challenge his felony murder conviction pursuant to *Morgan* considering that it would be a meritless argument. It is not incompetence for counsel to refrain from raising issues which, in counsel's judgment, are *without merit*, unless counsel's appraisal of the merits is patently wrong. *People v. Jones*, 399 Ill. App. 3d 341, 372 (2010). Consequently, the defendant in this case did not receive ineffective assistance of counsel. See *People v. Ramirez*, 2018 IL App (1st) 152125, ¶ 15 (because a defendant must satisfy both prongs of the *Strickland* test to prevail on a claim of ineffective assistance of counsel, once we find that counsel's performance was not deficient, we need not reach the issue of prejudice).

¶ 32    We note that the defendant also heavily relies upon *O'Neal*. The defendant in that case, fired multiple shots at a van because he believed it was being driven by rival gang members. *O'Neal*, 2016 IL App (1st) 132284, ¶ 1. He also claimed to be acting in self-defense, but one of the bullets fired by the defendant, inadvertently struck his friend sitting in a nearby car, killing him. *Id.* This court held that the defendant could not be convicted of felony murder because there was no return gunfire before or after the defendant began shooting, rendering that case "distinguishable from supreme court precedent finding certain felonies to be appropriate predicates for felony murder where it was unclear whether [the] defendant or someone else ultimately killed the victim." *Id.* ¶ 45, 46. We held that the defendant's "discharge of a firearm in the direction of the van's occupants was an act inherent in the killing" of the victim and so the defendant's felony murder conviction could not stand. *Id.* ¶ 54.

¶ 33    However, as the defendant concedes, *O'Neal* was decided in 2016, *after the defendant's trial and appeal had concluded.* Assuming *arguendo* that *O'Neal* supports the defendant's position

regarding predicate felonies, it cannot be said that the defendant's counsels were ineffective for failing to predict the court's ruling in *O'Neal*. Attorneys are neither expected nor required to be clairvoyant in order to be effective. *People v. Peel*, 2018 IL App (4th) 160100, ¶ 46. It would also be illogical to find that the defendant's counsels were ineffective for failing to, as the defendant now asserts, argue the *logic* of *O'Neal* since it was "based on [] *Morgan*." Finding an attorney to be ineffective for failing to predict future inferences or extensions of existing case law so as to conclude how a future court would rule, would be nonsensical.

¶ 34 Simply put, the defendant's speculative arguments as to why his felony murder conviction cannot be predicated upon the aggravated battery with a firearm conviction are meritless and based on case law that did not exist at the time of the defendant's trial and appeal. Thus, the defendant cannot establish that he received ineffective assistance of counsel based on expecting his trial and appellate counsel to predict future case law and court rulings. The trial court therefore properly dismissed his postconviction petition.

¶ 35                                        CONCLUSION

¶ 36 For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 37 Affirmed.